723 F.2d 54
 The KEMMERER COAL COMPANY, a Wyoming corporation, Plaintiff-Appellee,
v.
BRIGHAM YOUNG UNIVERSITY, a Utah corporation, and Duane A.
Frandsen and Velma B. Frandsen, his wife,
Defendants-Appellants.
 No. 81-1477.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 30, 1983.
 
 Clark R. Nielsen, Salt Lake City, Utah (Arthur H. Nielsen, Salt Lake City, Utah, with him on brief), of Nielsen & Senior, Salt Lake City, Utah, for defendants-appellants.
 Claron C. Spencer, Salt Lake City, Utah (Keith W. Meade, Salt Lake City, Utah, with him on brief), of Spencer & Brown, Salt Lake City, Utah, for plaintiff-appellee.
 Before McWILLIAMS, DOYLE and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 The ultimate question in this quiet title diversity action is which of the parties will suffer the consequences of an assessor's mistake. Plaintiff Kemmerer Coal Company (Kemmerer) and defendants Brigham Young University and Duane and Velma Frandsen (collectively referred to as "BYU") contest under Utah law the ownership of coal deposits to which both plaintiff and defendants hold title. Kemmerer traces its title to a 1907 coal deed, while BYU traces title to a 1954 tax sale deed conveying "underground rights" in the lands in question. BYU appeals from the trial court's grant of summary judgment quieting title in Kemmerer, arguing, inter alia, that Kemmerer's suit is barred by statutes of limitation. We agree and reverse.
 
 I.
 THE PARTIES' CLAIMS OF TITLE
 
 2
 The lands containing the contested coal are located in Emery County, Utah. Both Kemmerer and BYU trace title back to Lewis Edwards, who originally owned both the surface and the underground rights.
 
 A. Kemmerer
 
 3
 In 1907, Lewis Edwards conveyed "the coal of every kind and nature, lying and being beneath the surface of the ground" to Ira Browning by deed recorded August 6 in the office of the Emery County Recorder. Rec., vol. I, at 43. In 1909, Browning conveyed the coal rights in the N 1/2 of Section 28 to the San Rafael Fuel Company using identical words of conveyance. San Rafael properly recorded the deed. It held the coal rights until 1958, but never mined or developed the coal. In 1958, it gave Kemmerer a quitclaim deed to the NE 1/4 of Section 28, which Kemmerer recorded in the Emery County Recorder's office.B. BYU
 
 
 4
 In 1908, Lewis Edwards gave George Edwards a warranty deed to "[t]he East half of the North East Quarter of Section 28." Id. at 52. The deed, recorded on November 6, 1911, contained no reservation of any coal or mineral rights, and made no mention of the coal rights conveyed to Browning the previous year. The described lands were subsequently conveyed in several recorded transactions, ending for our purposes with a conveyance to John S. Lewis.
 
 
 5
 In 1936, the county assessed the "coal lands" in the entire NE 1/4 of Section 28 separately from the surface rights. However, the "coal lands" assessment was made to John S. Lewis, Joseph Jensen, and Lyle Jensen, the then surface owners. Lewis and the Jensens did not pay the $17.11 assessment. On December 31, 1936, the Emery County Treasurer sold the "NE 1/4 of Sec. 28 ... Containing 160 acres (Underground)" to Emery County for $18.26, subject to a four-year redemption period. The property was not redeemed, and in 1941 the county received an Auditor's Tax Deed to the property described above. The deed recites that the subject property (which includes the property herein claimed by Kemmerer) had been sold for taxes "assessed in the name of John S. Lewis et al as owner for the year 1936," and that notice of the assessment and foreclosure proceedings had been given to "John S. Lewis et al." Id. at 62.
 
 
 6
 In 1954, Emery County issued G. Pete Frandsen a Tax Deed to the "North 60 rds of the NE 1/4 of NE 1/4 of Sec. 28 ... Underground Rights Only." Id. at 64. After subsequent recorded transactions, the "underground coal rights" in the west half of the subject lands were conveyed in 1975 to BYU for "$10.00 and other good and valuable consideration, as a gift and donation." Id. at 68.
 
 II.
 THE TRIAL COURT'S DECISION
 
 7
 Kemmerer brought this action in district court to quiet title to its interest in the coal rights. Neither the surface rights nor minerals other than coal are in dispute. The trial court granted Kemmerer's motion for summary judgment. In reciting the undisputed facts, the court recognized that the "coal lands" were assessed in 1936 to John S. Lewis and the other surface owners; that no assessment of the coal was made to San Rafael Fuel Company, the record owner of the coal interest; and that no notice of the assessment to Lewis was provided to San Rafael. The court further noted that G. Pete Frandsen and his successors in interest in the tax title had subsequently been assessed for the "underground rights" conveyed by the tax deed, and that "[t]he tax proceedings referred to were all conducted in the names of persons who owned the surface and non-coal mineral interests in the complaint lands.... No notice of the tax proceedings which gave rise to the defendants' tax titles was given to anyone in the chain of title to the coal." Id. at 87-88. The court concluded that the property assessment and subsequent tax sale were invalid for lack of due process and that, as a consequence, Kemmerer is not barred by the Utah statutes of limitations from attacking BYU's tax titles. This appeal followed.
 
 III.
 
 8
 BYU argues on appeal that the Utah statutes of limitations bar Kemmerer from attacking BYU's tax title, regardless of whether the tax proceedings deprived Kemmerer's predecessor in interest, San Rafael, of its property without due process.
 
 
 9
 Utah, like many states, has enacted special short statutes of limitations governing actions contesting the validity of tax titles.
 
 
 10
 "No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff or his predecessor was seized or possessed of such property within seven years from the commencement of such action; provided, however, that with respect to actions or defenses brought or interposed for the recovery or possession of or to quiet title or determine the ownership of real property against the holder of a tax title to such property, no such action or defense shall be commenced or interposed more than four years after the date of the tax deed, conveyance, or transfer creating such tax title unless the person commencing or interposing such action or defense or his predecessor has actually occupied or been in possession of such property within four years prior to the commencement or interposition of such action or defense or within one year from the effective date of this amendment."
 
 
 11
 Utah Code Ann. Sec. 78-12-5.1 (1953) (emphasis added). See also id. Sec. 78-12-5.2. Section 78-12-5.3 defines "tax title" as "any title to real property, whether valid or not, which has been derived through or is dependent upon any sale...." BYU argues that because of this four year statute of limitations, Kemmerer is barred from attacking the validity of BYU's tax title more than twenty years after the tax sale.
 
 
 12
 Subsequent to the district court's decision in this case, the Utah Supreme Court construed the scope of the tax title statutes of limitations. Frederiksen v. LaFleur, 632 P.2d 827 (Utah 1981), involved a quiet title action brought by the record owners against purchasers under a tax deed acquired in a procedurally defective tax sale. One of the main issues on appeal was "the applicability of the short statute of limitations designed to protect tax titles." Id. at 827. Prior to examining the limitations statute, the court noted that
 
 
 13
 "statutes providing for the sale of tax-delinquent lands and the issuance of tax deeds pursuant to such sales are to be construed narrowly and in favor of the tax debtor. We regard this position as settled law in this state, except to the extent it has been modified by legislative enactment."
 
 
 14
 Id. at 828 (footnote omitted). The court then turned to the various statutes involved in the appeal.
 
 
 15
 "We next consider what kind of claim the tax purchasers must make to the property in order to raise a statute of limitations defense. The tax purchasers' only claim to the property in this case was a tax deed derived from an admittedly defective tax sale.
 
 
 16
 "Sections 78-12-5.1 and 78-12-5.2 bar actions or defenses against 'the holder of a tax title.' Section 78-12-5.3 defines 'tax title' as 'any title to real property whether valid or not,' derived from a tax sale. (Emphasis added.) Our Legislature could hardly have expressed itself more clearly. This Court has often cited and applied Sec. 78-12-5.3 to permit holders of invalid or questionable tax titles to claim protection under the special limitations statute. Kanawha and Hocking Coal and Coke Company v. Carbon County [535 P.2d 1139 (Utah 1975) ], supra (tax title assumed invalid); Layton v. Holt [22 Utah 2d 138, 449 P.2d 986], supra (tax title alleged invalid due to county auditor's failure to attach affidavit to assessment roll); Peterson v. Callister [6 Utah 2d 359, 313 P.2d 814], supra (tax title 'technically may not have passed' due to county's failure to follow various statutory steps); Hansen v. Morris [3 Utah 2d 310, 283 P.2d 884], supra (tax title not perfected due to failure to comply with necessary statutory steps). We see no reason to depart from these precedents or to reject the plain meaning of the statute."
 
 
 17
 Id. at 830-31. The court concluded that the "tax purchasers may avail themselves of the special statute of limitation regardless of either the invalidity of their tax title or their inability to establish an affirmative claim to title apart from their tax title." Id. at 831 (footnotes omitted). In a significant footnote, the court specifically left open the question argued to us in this appeal:
 
 
 18
 "We expressly reserve opinion on whether the special statute of limitations could protect a tax title acquired by means repugnant to fundamental fairness or whether such an application of the statute would exceed the limits of statutory intent or constitutional permissibility."
 
 
 19
 Id. at 831 n. 14 (emphasis added).
 
 
 20
 Kemmerer argues that this case involves the very question reserved in Frederiksen: a tax title void for lack of due process. Specifically, Kemmerer contends that due process was violated based on the following undisputed facts. Its predecessor, San Rafael, received no notice of the tax assessment on the coal and received only publication notice of the resultant sale of the coal rights. This notice erroneously listed strangers to the title as owners, although the Emery County records clearly showed San Rafael to be the true owner of the assessed interest. An examination of those records would have revealed that fact. See Fivas v. Petersen, 5 Utah 2d 280, 300 P.2d 635, 637-39 (1956).
 
 
 21
 These factors arguably indicate that the county deprived San Rafael of due process by its slipshod procedure. See generally Mennonite Board of Missions v. Adams, --- U.S. ----, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); Texaco, Inc. v. Short, 454 U.S. 516, 531-38, 102 S.Ct. 781, 792-96, 70 L.Ed.2d 738 (1982); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); Mullane v. Central Hanover Bank, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Tolman v. Salt Lake County, 20 Utah 2d 310, 437 P.2d 442 (1968). Kemmerer asserts that the limitations statute does not bar this due process attack on BYU's tax title.[1]
 
 
 22
 In 1900, the United States Supreme Court stated in dictum that a reasonable statute of limitations can constitutionally bar claims based on alleged violations of federal due process rights. Saranac Land & Timber Co. v. Roberts, 177 U.S. 318, 329-31, 20 S.Ct. 642, 647, 44 L.Ed. 786 (1900). We need not decide whether the analysis in that case would survive current constitutional jurisprudence, however, because Kemmerer itself has suffered no due process injury. If a constitutional violation occurred, it was the taking of San Rafael's property without due process. Kemmerer thus seeks to advance its claim by asserting a third-party's constitutional rights. "[T]he general rule is that 'a litigant may only assert his own constitutional rights or immunities.' " McGowan v. Maryland, 366 U.S. 420, 429, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) (quoting United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960)). See Broadrick v. Oklahoma, 413 U.S. 601, 610-11, 93 S.Ct. 2908, 2914-15, 37 L.Ed.2d 830 (1973) (constitutional rights are personal and cannot be asserted vicariously); Utah v. Harding, 576 P.2d 1284, 1284-85 (Utah 1978) (citing McGowan ). This rule has been applied to bar a grantee's assertion that its grantor's due process rights were violated. See Hewitt v. Glaser Land & Livestock Co., 97 Nev. 207, 626 P.2d 268 (1981); accord United States v. Haddon, 550 F.2d 677, 681 (1st Cir.1977).
 
 
 23
 We believe the Utah Supreme Court would hold that Kemmerer has no standing to assert a third-party's constitutional rights under the facts of this case. While it may have been "repugnant to fundamental fairness," Frederiksen, 632 P.2d at 831 n. 14, to deprive San Rafael of its property without proper notice, we do not believe it fundamentally unfair to apply the statute of limitations to Kemmerer who bought the coal lands in the face of record notice of a rival claim to "underground rights."
 
 
 24
 We hold that Kemmerer is barred from contesting BYU's tax titles. Accordingly, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Kemmerer's only possible constitutional claim is that its predecessor in interest had inadequate notice of the County's claim to the "coal lands," even though the coal interest was assessed by the proper description. Its other argument concerning a misdescription in the tax deed itself does not rise to the level of a constitutional claim. If the County Assessor validly received authority to sell the "coal lands" through tax assessment and delinquency proceedings, the fact that the treasurer issued a deed covering "underground" rather than "coal" raises only questions of the validity of the transfer from the Treasurer to Emery County. These questions are procedural and thus barred by the statutes of limitations. See Frederiksen v. LaFleur, 632 P.2d 827 (Utah 1981)
 With respect to its constitutional claim, Kemmerer's reliance on Hayes v. Gibbs, 110 Utah 54, 169 P.2d 781 (1946), and Tintic Undine Mining Co. v. Ercanbrack, 93 Utah 561, 74 P.2d 1184 (1938), is misplaced. Tintic involved the debtors' recovery from the tax purchaser of land that was neither properly described nor noticed to the owners in the assessment and tax sale. However, the suit to set aside the tax deed was brought within the statute of limitations period. In Hayes, unlike here, the court held that the property right at issue was not covered by the tax sale because it had not been described in the assessment of the fee. The Utah court stated that "the property assessed and the property conveyed must be the same. If property rights which are not included in an assessment are sold or extinguished by a tax sale, there would be a taking of property without due process." 169 P.2d at 786 (emphasis added). Moreover, as in Tintic, the statute of limitations was not an issue in the case.