**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES PATER, Wyoming
Resident, and BARRY GASDEK,
Wyoming Resident,

      Plaintiffs-Appellants,

    v.

THE CITY OF CASPER, a Wyoming
Governmental Entity,

      Defendant-Appellee.

No. 09-8084

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 1:08-CV-00274-ABJ)**

---

Robert Todd Ingram (Larry R. Clapp with him on the briefs) Clapp, Ingram &
Olheiser, P.C., Casper, Wyoming, for Appellants.

Judith A. Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming, for
Appellee.

---

Before **HARTZ**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

This case arises out of a contract dispute between two landowners and the City of Casper regarding whether the landowners are obligated to reimburse the City for certain street improvements. When the landowners did not comply with the City's demands for payment, the City recorded deficiency notices in the local property records for their lots. With this burden on the landowners' titles, the City expected prompt payment of the assessment.

Instead, the landowners sued the City, claiming the notices violated their right to due process and equal protection. The district court granted summary judgment in favor of the City on the ground that the landowners had not shown the existence of a protected property interest, and in any case that the deficiency notices did not constitute a deprivation of any right. We reverse, concluding the landowners have demonstrated a disputed issue of fact as to whether the City harmed their property interests, and we remand for consideration of whether this deprivation violated the Due Process Clause. But we also find the district court did not abuse its discretion in dismissing the equal protection claim.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we REVERSE and REMAND in part and AFFIRM in part.

## I. Background

Plaintiffs Charles Pater and Barry Gasdek each own several residential lots in the Cottonwood Addition subdivision in Casper, Wyoming. As successors in

interest to the original developer, plaintiffs are parties to the Cottonwood Addition Subdivision Agreement.

The Subdivision Agreement is a contract with the City of Casper, which provides that, "Upon demand of the City Council, the owners, at their sole cost and expense, shall do or cause to be done" the construction of Trevett Lane in accordance with the technical specifications of the City Engineer. R., Vol. I at 45–46.

The Subdivision Agreement allows the City to undertake improvements if the owners refuse to do so, and seek reimbursement for the cost:

> *In the event the owner fails to do, or cause to be done, any of the requirements set forth in this contract in an expeditious manner, the City may* at its option do any or all of the following:
>
> A. Refuse to issue any building permits . . . .
>
> B. *After written notice . . . and failing cure by owner within reasonable period of time, the City may complete any and all of the public improvements required by this contract by itself or by contracting with a third party to do the same. In the event the City elects to complete said improvements or contract with a third party to do so, the owners agree to pay any and all costs resulting therefrom upon demand by the City.*
>
> The Remedies provided in this paragraph are in addition to any other remedies specifically provided for in this contract, or which the City might otherwise have at law or in equity, and are not a limitation upon the same.

*Id.* at 51 (emphasis added).

In addition to the agreement with plaintiffs, the City entered into a similar agreement with the developer of a neighboring subdivision. This agreement required the developer to construct Trevett Lane and committed the City to securing partial reimbursement from other property owners. Between 2004 and 2006, in accordance with this agreement, the developer constructed Trevett Lane. Prior to construction, the City did not contact plaintiffs about Trevett Lane, either to request that they do the work themselves or to notify them that a third party had been contracted to do the work.

After the project was completed, the Casper City Council sought contribution from plaintiffs for the cost of the street improvements, pursuant to the Subdivision Agreement. First, the City Council enacted a resolution—again, after the fact—that "ordered, demanded, approved, and authorized" the street improvements that had already been made. R., Vol. III at 616 (Resolution No. 06-306). With the resolution in hand, the City's attorneys then sent plaintiffs a letter requiring payment for their pro rata share of the construction of Trevett Lane.

The letter informed plaintiffs of the amount of their obligation and their duty to pay the assessed amounts in one lump sum or over a ten year period at eight percent interest. For example, the letter to Gasdek stated:

> Pursuant to the Subdivision Agreement for your subdivision, your
> real property is assessable for the pro rata share of the public
> improvement costs based upon the lineal footage of your property

which abuts Trevett Lane.  In this regard, the assessment for all of your property for the street improvements is the total sum of $143,709.12.

R., Vol. I at 125.  The letter to Pater was identical, except that the sum demanded was $118,549.16.  *Id.* at 122.

A few weeks later, before plaintiffs responded to the letters and without further notice, the City Council passed another resolution finding the City's assessment of costs was "fair and equitable" and "the proper method for the apportionment" of construction costs.  *Id.* at 131–32 (Resolution No. 07-136). The City then recorded a "Notice of Apportionment and Assessment" (Notice of Assessment) with the County Clerk against each of plaintiffs' properties.

The Notices of Assessment provided:

[T]he pro-rata share of the Trevett Lane public improvements apportioned and assessable to this real property is the total sum of [the parcel-specific assessment], said sum being due and owing to the City of Casper until paid in full. . . .

UPON THE PAYMENT OF THE TOTAL SUM DUE THE CITY OF CASPER UNDER THIS NOTICE, THE CITY SHALL FILE IN THE REAL ESTATE RECORDS OF NATRONA COUNTY, WYOMING A RELEASE AND SATISFACTION SHOWING THAT ALL SUMS DUE AND OWING HEREUNDER HAVE BEEN PAID IN FULL.

*Id.* at 134.

Plaintiffs believed they did not owe the claimed sum under the terms of the Subdivision Agreement because the City had never made a written demand for the construction of Trevett Lane, as the Agreement required, until after the street had

already been built.  They also claimed the Notices placed a cloud on their property title.  Accordingly, they filed a complaint in state court asserting claims for declaratory judgment, a breach of the duty of good faith and fair dealing, and a violation of plaintiffs' due process rights under 42 U.S.C. § 1983.  The City removed the case to federal court, and made counterclaims alleging breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment.

In response to cross motions for summary judgment, the district court dismissed plaintiffs' § 1983 claims and remanded the remaining claims to state court.

## II.  Discussion

Plaintiffs contend the district court erred in dismissing their § 1983 claims, asserting violations of their right to procedural due process and equal protection. For the reasons discussed below, we agree the district court erred in dismissing the due process claim.  But we find no abuse of discretion in the court's treatment of the equal protection claim.

### A.  Due Process

Plaintiffs' first argument is that the City's Notices of Assessment deprived them of a property interest without due process.  Specifically, they claim they were not obligated to reimburse the City for the street improvements under the terms of the Subdivision Agreement.  If the City disagreed, they contend, its

proper recourse was an action in breach of contract. Plaintiffs assert the City's in terrorem attempt to enforce its understanding of the contract by recording the Notices of Assessment against their property, without giving plaintiffs notice or an opportunity to object, violated their right to procedural due process.

The Fourteenth Amendment prohibits the government from depriving an individual of property "without due process of law." U.S. CONST. amend. XIV, § 1. Under the Due Process Clause's requirements, "procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

In evaluating a procedural due process claim, we undertake a two-step inquiry. First, we ask whether the City's actions deprived plaintiffs of a constitutionally protected property interest. *Id.* If plaintiffs can satisfy this requirement, we then consider whether they were afforded the appropriate level of process. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

*1. Step One: Deprivation of a Property Interest*

The first inquiry turns on whether plaintiffs' claim implicates a protected property interest, and the scope of that interest. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Hulen v. Yates*, 322 F.3d 1229,

1240 (10th Cir. 2003) (quotation omitted). "[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Id.* Thus, for example, courts have identified property interests arising from state zoning regulations, *see Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1026 (10th Cir. 2011), state employment contracts, *see Yates*, 322 F.3d at 1241, and restrictive covenants between government agencies and private parties, *see Juarez v. F.A.A.*, Nos. 97-70112, 97-70722, 1998 WL 482929, *1–2 (9th Cir. Aug. 11, 1998). And, of course, ownership of land or real estate is a quintessential source of property interests. *See Connecticut v. Doehr*, 501 U.S. 1, 10–12 (1991); *see also Peralta v. Heights Med. Ctr, Inc.*, 485 U.S. 80, 85–86 (1988).

The parties part company on the basic property interest at stake here. The City interprets plaintiffs' argument as suggesting the Subdivision Agreement created a property interest in the opportunity to object to the City's demand for the construction of Trevett Lane. The City points out the Subdivision Agreement makes no mention of such an entitlement and gives the City full discretion to determine when and how to make the demand. It therefore argues the contract does not create a protected property right on which plaintiffs can rest their claim.

This argument misconstrues plaintiffs' complaint. Plaintiffs contend the Notices of Assessment encumbered their interest in the Cottonwood Subdivision lots—*their real property*—against which the Notices are recorded. In other

words, that the Notices infringed on their interest in their land. Thus understood, plaintiffs' claims arise from their title to real estate and not from some abstract benefit conferred by the Subdivision Agreement.

Having identified the property interest at issue here, we must next consider whether the Notices of Assessment constitute a deprivation of plaintiffs' interest in their real estate. The district court found no deprivation after concluding the Notices did not empower the City to foreclose on the burdened property. While true enough, the point is not whether the City could foreclose or otherwise take plaintiffs' property to satisfy a financial obligation, but whether the Notices sufficiently encumber the property interest to be a legally cognizable deprivation of right.

The Supreme Court has made it clear that something less than a complete, physical, or permanent deprivation of real property may be sufficient to trigger due process concerns. In *Doehr*, addressing a prejudgment attachment, the Court recognized "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." 501 U.S. at 12. It went on to find a prejudgment attachment has a significant effect on property interests, because it "ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where

there is an insecurity clause." *Id.* at 11. The Court rejected the state's argument that only "extreme deprivations" such as "complete, physical, or permanent deprivation of real property" are required before due process protections come into play. *Id.*

Following *Doehr*, we must thus consider whether the Notices created an impairment equivalent to "attachments, liens, and similar encumbrances." We believe at this stage in the proceedings plaintiffs have met their burden on this score.

The precise legal effect of the Notices of Assessment under Wyoming law is not entirely clear. The City contends the Notices do no more than inform third parties that assessments have been imposed on plaintiffs. That they surely do. But plaintiffs, on the other hand, insist the Notices create a cloud on their title to the Cottonwood Subdivision lots and impair their ability to sell the property.

Plaintiffs do not challenge the district court's finding that the Notices do not enable the City to foreclose on the properties without further proceedings. The Notices therefore do not constitute formal "judgment liens" as defined by Wyoming law. *See* WYO. STAT. ANN. § 1-17-302 (1957) ("The lands and tenements within the county in which judgment [lien] is entered are bound for the satisfaction thereof from the day the judgment [lien] is filed with the county clerk.").

But there is reason to think the Notices had the effect of lowering the market value of the burdened properties or limiting their alienability. Plaintiffs argue the Notices run with the land—that is, the Notices will cause future owners of the property to be liable for the assessments if plaintiffs do not make the demanded payments. If this is true, the Notices have the effect of impairing the value of the land by the amount of the assessments or restricting its attractiveness to potential buyers.

Plaintiffs' contention is supported by evidence in the record suggesting this was the City's intent. In a letter sent to plaintiffs after the Notices were filed, the Casper City Attorney explained their intended effect:

> In order to protect the taxpayers' interest in this matter, the City had the right and the obligation to record the notices of the assessment of the pro-rata costs of the construction of Trevett Lane and its associated public improvements against your client's subdivided lots. *Had the City not done so, future owners of the property could have claimed that they were bona fide purchasers for value and would not be required to pay the assessments . . . .*

R., Vol. I at 247 (emphasis added). This letter confirms the City believed that once the Notices were recorded, future buyers could only take the burdened properties subject to the assessments.

In addition, the City Manager testified the Notices themselves are "an attempt to recoup the cost the taxpayers have paid for the cost of improvements on Trevett Lane." *Id.* at 190. When asked whether the Notices are a charge against the land, he stated, "I would hope so, that is correct." *Id.*

-11-

This evidence is buttressed by common sense. If the assessments could only be obtained from plaintiffs, the City would have no purpose in giving notice to third parties interested in the property. It is obvious the City's intention in recording the Notices of Assessment was, as the City Attorney stated, to impose a burden on the property that could not be evaded by sale to a third party.

More importantly, even if the City was incorrect that the Notices created an enforceable servitude against future buyers, the Notices would still have raised a red flag to any potential purchaser. A title search would reveal the Notices, and the suggestion that the assessment *might* be held against future buyers would effectively lower the market value of the property or reduce its alienability.

In addition, plaintiffs have offered evidence suggesting the Notices effectively prevent the sale of the burdened property until the assessments are paid. Before the district court, plaintiffs designated a local title insurance agent as an expert witness. In the designation, plaintiffs asserted the witness would testify that the Notices were "an obligation that must be satisfied and cleared off title, at closing or sooner, prior to the issuance of a title insurance policy." Plaintiffs' Designation of Expert Witnesses, *Pater v. City of Casper, Wyoming*, No. 08-00274 (D. Wyo. June 10, 2009). In other words, plaintiffs contend that until the assessments are paid, a future buyer cannot obtain title insurance. Plaintiffs convincingly argue that, without title insurance, no reasonable buyer would purchase the property. Given this status, until plaintiffs resolve their

-12-

contract dispute with the City regarding the Subdivision Agreement, their lots will be difficult to market.

We further note the potential injury arising from an improperly recorded notice against property has been recognized in another context, in the tort of slander of title. This common law cause of action is based on the notion that disparagement of title can impair the ability of a landowner to sell or lease property. RESTATEMENT (SECOND) OF TORTS § 624 (1977) (defining slander of title as "the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm . . . to the other's interests in the property"). While not directly analogous, the principle illustrates the point that the Notices have the potential to cause legally cognizable harm to plaintiffs' property interests.

Accordingly, in light of this evidence, we conclude plaintiffs have established a disputed issue of fact as to whether the Notices effectively decreased the value of the property by the amount of the assessments or prevented the sale of the property entirely.

But even if these allegations are true, the question remains whether the Notices created a sufficient cloud on title to constitute a deprivation for due process purposes. Two circuit courts have considered the question in related circumstances and have reached differing conclusions. The Second Circuit, in *Diaz v. Paterson*, 547 F.3d 88 (2d Cir. 2008), addressed the affect of a *lis pendens*

on private property. A *lis pendens* is a notice filed against property informing third parties of pending litigation in which the ownership of that property is disputed. *Id.* at 90. Once the *lis pendens* is recorded, prospective buyers have constructive notice of the competing interests in the property, and take the property subject to the judgement in the concurrent lawsuit. *Id.* In other words, filing a *lis pendens* has the effect of preventing sale or lowering the market value of the property, pending the conclusion of related litigation.[1] *Diaz* did not resolve the question of whether the restriction on alienation of property constitutes a deprivation for due process purposes, since it found the challenged statute provided sufficient process. But it did note a *lis pendens* "is arguably [] a similar encumbrance" to a prejudgment attachment, meriting due process protection under *Doehr*. *Id.* at 95–96.

In contrast, the Eleventh Circuit held a *lis pendens* "does not affect property interests to an extent significant enough to implicate the Due Process

---

[1]    As is the case with the Notices at issue here, a *lis pendens* does not *expressly* bar alienation of the burdened property. But the property records "show[] that the property is subject to the [filing party's] claim and hence buyers would seldom pay a full price . . . . So the *lis pendens* is a kind of unilateral attachment, without benefit of judicial supervision, and at the very least must be subject to expungement when it is inappropriately used." DAN B. DOBBS, LAW OF REMEDIES § 6.1 at 32 (2d ed. 1993). Of course, a *lis pendens* traditionally has attendant procedural protections that do not apply here. In Wyoming, a notice of *lis pendens* may only be filed for suits "affecting the title or right of possession of real property." WYO. STAT. ANN. § 1-6-108 (1957). And then only after filing a complaint in a court of competent jurisdiction. WYO. STAT. ANN. § 1-6-107 (1957). If the plaintiff does not prevail in his suit, the notice is removed.

Clause of the Fifth Amendment." *United States v. Register*, 182 F.3d 820, 836–37 (11th Cir. 1999). The court acknowledged that "notices of lis pendens have the practical effect of impeding an owner's ability to sell property, particularly at its (unrestricted) market value." *Id.* at 836 (quotation omitted). But, it reasoned, "the *right* to alienate the property exists," and "even accounting for this practical consequence, notices of lis pendens affect only one incident of ownership—alienability—whereas other methods of securing potentially forfeitable property are significantly more restrictive." *Id.* (quotation and alteration omitted). In support, the Eleventh Circuit cited a Supreme Court decision, *Kirby Forest Indus. v. United States*, 467 U.S. 1 (1984), which it characterized as holding that the filing of a *lis pendens* does not implicate a property owner's Fifth Amendment rights. *Register*, 182 F.3d at 836.

The reasoning in *Register* is unpersuasive for two reasons. First, the Eleventh Circuit did not address the conflict between its holding that a restraint on alienability is insufficient to create a deprivation and the language of *Doehr*. In fact, the court did not cite *Doehr* at all. And second, in any event, we disagree with the court's reading of *Kirby Forest*. In that case, the Supreme Court did not consider whether a *lis pendens* can be a deprivation under the Due Process Clause; it held only that a *lis pendens* is not a government taking under the Takings Clause. *Kirby Forest Indus.*, 467 U.S. at 15. But the standards for a procedural due process claim and a takings claim are not the same. *Compare*

-15-

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) (stating that a regulatory taking occurs only where the regulation denies the landowner all beneficial use of the land, or where the economic impact, the interference with reasonable investment-backed expectations, and the character of the government action indicate a taking) *with Doehr*, 501 U.S. at 12 (finding the partial impairment to property rights caused by prejudgment attachment is sufficient to merit due process protection).

Applying *Doehr*, we conclude an encumbrance with the characteristics of the Notices of Assessment can be a deprivation of a property interest. At this stage in the proceedings, plaintiffs have successfully alleged the Notices either impair their ability to alienate their property or reduce its market value. We find these attributes, if proven, place the Notices squarely in the category of "attachments, liens, and similar encumbrances." *Doehr*, 501 U.S. at 12. As was the case with the prejudgment attachment at issue in *Doehr*, the Notices allegedly act as a restraint on alienability that could potentially lead to other adverse consequences, such as a tainted credit rating, a reduced chance of obtaining a home equity loan or future mortgage, and even a threat to an existing mortgage burdened with an insecurity clause. *See id.* at 11.

Thus, plaintiffs have shown a genuine dispute of fact as to whether the City's actions deprived them of a protected property interest.

## 2. *Level of Process*

We now turn to the second prong of the due process inquiry—that is, whether plaintiffs were afforded sufficient process to satisfy the Fourteenth Amendment. Because the district court found plaintiffs could not establish the deprivation of a protected property interest, it did not reach this question, and appellate briefing is sparse. We therefore remand to the district court for further proceedings on this issue.

In so doing, we note the procedural due process analysis is "not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) (quotations omitted). To determine what process is due where the government effects a deprivation, a court must balance the three factors laid out by the Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976): (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See also Doehr*, 501 U.S. at 11. "Although the exact procedures required by the Constitution depend on the circumstances of a given case, the

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *PJ v. Wagner*, 603 F.3d 1182, 1200 (10th Cir. 2010) (quotation and alterations omitted).

Where the government has a preexisting right to the property at issue, it has a "heightened interest [that] in certain circumstances can provide a ground for upholding procedures that are otherwise suspect." *Doehr*, 501 U.S. at 12 n.4 (finding the creditor's interests served by prejudgment attachment statute did not justify ex parte procedure where he "had no existing interest in [the property owner's] real estate when he sought the attachment[,]" but only sought "to ensure the availability of assets to satisfy his judgment if he prevailed").

One of our cases is illustrative. In *Cobb v. Saturn Land Co.*, we acknowledged that recording a notice of a lien prejudiced the rights of the property holder. 966 F.2d 1334, 1337–38 (10th Cir. 1992). Nonetheless, we upheld the contested lien statute because state law automatically granted an oil and gasoline lien in favor of unpaid workers and companies that had fulfilled contracts relating to the extraction of these resources. *Id.* The fact that the creditors had an interest in the property before recording the notices justified the limited process granted by the state. *Id.*; *see also Doehr*, 501 U.S. at 12 n.4 (observing that a mechanic's lien statute could be upheld where state law gave the mechanic an interest in the property at issue predating the actual recording of notice); *id.* at 29 (Rehnquist, C.J., concurring) (stating that a postsequestration

-18-

hearing provides sufficient process for filing a notice of *lis pendens*, as the filing party already claims an interest in the property that he seeks to enforce through a concurrent lawsuit).

Thus, resolution of this point will require the district court to determine whether the City had a preexisting interest in the burdened property under the Subdivision Agreement or Wyoming law. The court should also consider whether plaintiffs have received any postdeprivation process and the extent to which state law mandates additional procedures.

## B. Equal Protection

In their second claim, plaintiffs contend the City violated their right to equal protection by selectively targeting them for the assessments. Plaintiffs allege that other, similarly situated landowners in the Cottonwood Subdivision were not assessed for the costs of the construction of Trevett Lane, and that there is no rational basis for this disparity in treatment. In response, the City asserts it followed its historical practice of only assessing landowners whose property abuts the newly constructed road.

But the City also notes plaintiffs did not make an equal protection claim in their complaint; they raised this argument for the first time in their motion for summary judgment. Presumably for this reason, the district court did not address plaintiffs' argument. Plaintiffs urge that the court's failure to resolve the claim was reversible error.

An issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to Federal Rule of Civil Procedure 15. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998). We therefore construe the district court's refusal to address the new issue as a denial of plaintiffs' request. *See id.* at 795 n.21.

The decision to grant leave to amend the pleadings "is within the discretion of the trial court, and we will not reverse the court's decision absent an abuse of discretion." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204–05 (10th Cir. 2006) (internal quotations and alterations omitted).

Rule 15 mandates that the court grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a). As a general rule, a plaintiff should not be prevented from pursuing a claim merely because the claim did not appear in the initial complaint. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991). However, a court properly denies leave where "a late shift in the thrust of the case will [] prejudice the other party in maintaining his defense upon the merits." *Id.* (quotation omitted). The liberalized pleading rules do not allow plaintiffs "to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Id.* at 1091. In addition, "untimeliness alone is a sufficient reason to deny leave to amend . . . . when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)

Here, we cannot find the district court's refusal to treat the complaint as amended was an abuse of discretion. The new equal protection claim raised substantially different factual issues after the close of discovery. To allow the City to develop its defense, the court would have been forced to grant significant additional time for discovery. Nor did plaintiffs give a reason for their delay in setting forth the claim.

We find no error in the district court's failure to consider the equal protection claim.

### III.  Conclusion

For the foregoing reasons, we REVERSE the district court's dismissal of plaintiffs' procedural due process claim and REMAND for further proceedings consistent with this opinion.