**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VR ACQUISITIONS, LLC,

    Plaintiff - Appellant,

v.

No. 15-4138

WASATCH COUNTY; JORDANELLE
SPECIAL SERVICE DISTRICT; THE
JORDANELLE SPECIAL SERVICE
DISTRICT UTAH SPECIAL
IMPROVEMENT DISTRICT NO. 2005-2;
JAY PRICE; DAN MATTHEWS,

    Defendants - Appellees.
_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:15-CV-00018-DAK-EJF)**
_____

Timothy McCaffrey, Freeborn & Peters LLP, Chicago, Illinois (Michael R. Johnson,
Robert G. Wing, and Matthew M. Cannon, Ray Quinney & Nebeker, Salt Lake City,
Utah, with him on the briefs), for Plaintiff-Appellant.

Mark R. Gaylord, Ballard Spahr, Salt Lake City, Utah (Melanie J. Vartabedian and Tyler
Hawkins, Ballard Spahr, LLP, Salt Lake City, Utah, Barton H. Kunz, II, and Bryson R.
Brown, Christensen & Jensen, P.C., Salt Lake City, Utah, with him on the brief), for
Defendants-Appellees.
_____

Before **HOLMES**, **SEYMOUR**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

VR Acquisitions, LLC (VRA) owns a roughly 6,700-acre property in Utah's Jordanelle Basin (the VR property). VRA brought this action in 2015, asserting three federal constitutional claims under 42 U.S.C. § 1983 and five state-law claims. All of the claims rested, to some degree, on VRA's assertion that an invalid assessment lien was recorded against the VR property in 2009—three years before VRA bought the property. The district court dismissed all eight claims with prejudice under Fed. R. Civ. P. 12(b)(6), and VRA appeals. Because the district court properly dismissed VRA's § 1983 claims for lack of prudential standing, we affirm the dismissal of those claims with prejudice. But because the district court should have declined to exercise supplemental jurisdiction over VRA's state-law claims, we reverse its dismissal with prejudice of those claims and remand with directions for the district court to dismiss those claims without prejudice.[1]

## BACKGROUND

In 1993, the Wasatch County Council (the Council) established the Jordanelle Special Service District (the JSSD) to provide sewer and water services to residents

---

[1] VRA also asserted a separate federal claim for "VIOLATION OF 42 U.S.C. §§ 1983 & 1988." App. vol. 1, 58. The district court dismissed "all claims" on four alternative grounds without separately addressing how those grounds applied to any particular claim. App. vol. 4, 802, 810. We affirm its dismissal of this purported fourth federal claim for two reasons. First, § 1983 is the "remedial vehicle for raising claims based on the violation of constitutional rights," and "[t]here can be no 'violation' of § 1983 separate and apart from the underlying constitutional violations." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). Second, § 1988 "does not create [an] independent cause[] of action" but instead "simply 'defines procedures under which remedies may be sought in civil rights actions.'" *Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988) (quoting *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)).

2

in the Jordanelle Basin. During the time period relevant to VRA's allegations, Jay Price was a member of the Council and Dan Matthews was the JSSD's manager.

At least as early as 2002, the JSSD intended to construct a regional sewage treatment facility and provide wastewater treatment services to both the JSSD service area and properties in neighboring special service districts. In 2005, the JSSD adopted Resolution No. 2005-18 (the Notice of Intention), declaring its intent to create the Jordanelle Special Service Improvement District No. 2005-2 (the District) and to levy assessments against properties within the District. In 2006, the JSSD adopted Resolution 2006-04 (the Creation Ordinance), creating the District and authorizing financing for the improvements described in the Notice of Intention. In 2009, after a period of public comment, the JSSD enacted Ordinance No. 09-10 (the Assessment Ordinance), levying assessments against properties within the District—including the VR property.

The assessment against the VR property totaled nearly $17.5 million. The property's prior owner elected to pay the assessment over 20 years. On September 24, 2009, the JSSD recorded a Notice of Assessment Interest (the Assessment Lien) against the VR property.

ATC Realty Sixteen, Inc. obtained title to the VR property from the prior owner in 2010 through a deed in lieu of foreclosure. VRA bought the VR property from ATC Realty in 2012 with knowledge of the Assessment Lien.[2]

---

[2] VRA's complaint doesn't allege that VRA bought the VR property in 2012 or that it took title with knowledge of the Assessment Lien. But VRA doesn't dispute

3

Nearly three years later, VRA brought this action asserting three § 1983 claims: (1) a Fourteenth Amendment procedural due process claim, (2) a Fourteenth Amendment substantive due process claim, and (3) a Fifth and Fourteenth Amendment takings claim. VRA primarily sought a declaration that the Assessment Ordinance, the Creation Ordinance, and the Notice of Intention are void *ab initio*, and also sought removal of the Assessment Lien.

In support of these claims, VRA primarily alleged that the JSSD intentionally issued a false and misleading Notice of Intention in 2005 so property owners wouldn't object to the creation of the District or the proposed assessments against their properties. VRA further attacked the validity of the Assessment Lien by alleging that the JSSD misused bond money and unlawfully permitted non-assessed property owners to benefit from water and sewer improvements that were paid for only by assessed property owners. Finally, VRA alleged that Price and Matthews abused their public positions by funneling bond money to friends and family through questionable real estate and water rights transactions related to construction of the improvements.

The defendants moved under Rule 12(b)(6) to dismiss VRA's complaint. The district court granted the defendants' motion and dismissed all of VRA's claims with prejudice, reasoning that (1) the claims are time-barred under Utah Code Ann. § 11-

these facts and doesn't argue, in the context of its challenge to the district court's ruling on standing, that we shouldn't consider them as true. Moreover, VRA acknowledged at oral argument that it knew of the assessment lien when it bought the property.

4

42-106's 30-day limitation period for contesting an assessment; (2) the claims are time-barred under Utah Code Ann. § 78B-2-307(3)'s four-year statute of limitations; (3) VRA lacks standing to assert claims that belong to the VR property's prior owner; and (4) the Notice of Intention isn't false because it contained all information required by Utah Code Ann. § 17A-3-205 (2005).

## DISCUSSION

We review a Rule 12(b)(6) dismissal de novo. *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). We accept a plaintiff's well-pleaded factual allegations as true and determine whether the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As the plaintiff, VRA bears the burden of establishing standing to bring its claims. *Brown*, 822 F.3d at 1164. Here, the district court dismissed VRA's § 1983 claims based, in part, on its conclusion that VRA failed to carry that burden: it ruled that VRA "cannot demonstrate Article III [s]tanding." App. vol. 4, 806. But according to VRA, the district court's analysis reflects that the court actually found that VRA lacks prudential—as opposed to Article III—standing.

We agree. In concluding that VRA lacks standing, the district court noted that VRA "did not even exist in 2005 when [the defendants] issued the alleged constitutionally deficient 2005 Notice of Intention." *Id.* And it reasoned that VRA was therefore attempting to assert constitutional claims that belong to the VR property's prior owner. Thus, the court concluded, VRA's assertion of standing is

5

foreclosed by our decision in *Kemmerer Coal Co. v. Brigham Young University*, 723

F.2d 54 (10th Cir. 1983). *See id.* at 57 ("[T]he general rule is that 'a litigant may only

assert his own constitutional rights or immunities.'" (quoting *McGowan v. Maryland*,

366 U.S. 420, 429 (1961))).

This analysis is clearly rooted in principles of prudential, rather than Article

III, standing. *Compare RMA Ventures Cali. v. SunAmerica Life Ins. Co.*, 576 F.3d

1070, 1073 (10th Cir. 2009) (explaining that under doctrine of prudential standing,

"litigants cannot sue in federal court to enforce the rights of others"), *with Rector v.

City and Cty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) (noting that to

demonstrate Article III standing, plaintiff must plausibly allege (1) injury in fact, (2)

fairly traceable to defendants' conduct, (3) that is redressable by favorable judicial

ruling). Accordingly, despite the district court's explicit reference to Article III

standing, we conclude that the district court actually dismissed based on a finding

that VRA lacks prudential standing.[3]

---

[3] Whatever the actual basis for the district court's ruling, we would normally
have an independent obligation to verify that VRA has Article III standing to bring
its § 1983 claims before proceeding any further. *See Hobby Lobby Stores, Inc. v.
Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) ("[W]henever standing is unclear, we
must consider it *sua sponte* to ensure there is an Article III case or controversy before
us."); *see also Valenzuela v. Silversmith*, 699 F.3d 1199, 1204-05 (10th Cir. 2012)
(explaining that federal courts can't "assume they have subject matter jurisdiction for
the purpose of deciding claims on the merits"). But because we ultimately agree that
VRA lacks prudential standing to bring its § 1983 claims, we may affirm the district
court's order dismissing those claims without first assessing whether VRA has
Article III standing to bring them. *See Wilderness Soc'y v. Kane Cty.*, 632 F.3d 1162,
1168 (10th Cir. 2011) (en banc) ("Because [plaintiff] lacks prudential standing, we
proceed directly to that issue without deciding whether [plaintiff] has constitutional
standing . . . .").

VRA contends this was error.[4] First, VRA asserts that as the VR property's

current owner, it's being harmed by the defendants' actions. Specifically, VRA

complains that the VR property is "burdened and clouded by illegal assessment

liens," and that "the government will forcibly take that property if [VRA] fails to pay

the government tens of millions of dollars." Aplt. Br. 24.

But VRA's emphasis on its alleged injuries blurs the distinction between

Article III standing and prudential standing. *See Wilderness Soc'y*, 632 F.3d at 1171

(stating that "[p]rudential standing imposes different demands than injury in fact,"

and explaining that even if a party suffers "a cognizable injury" that party may "not

possess a right to relief"). Thus, even assuming VRA is being harmed, that doesn't

---

[4] Because VRA hasn't argued otherwise, we assume without deciding that it is appropriate to dismiss a complaint under Rule 12(b)(6), rather than Rule 12(b)(1), when the plaintiff lacks prudential standing. Because such standing isn't jurisdictional, *see Wilderness Soc'y*, 632 F.3d at 1168 n.1, other courts have concluded that dismissals under Rule 12(b)(6) for lack of prudential standing are appropriate, *see, e.g.*, *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."); *Genesee Cty. Emps. Ret. Sys. v. Thornburg Mortg. Sec. Trust 2006-3*, 825 F. Supp. 2d 1082, 1212 (D. N.M. 2011) (citing Fifth Circuit's view that prudential and statutory standing issues should be resolved under Rule 12(b)(6)). And because VRA doesn't challenge the district court's decision to dismiss the § 1983 claims with prejudice, we likewise need not consider whether the district court should have dismissed those claims without prejudice. *Cf. Brumfiel v. U.S. Bank*, 618 F. App'x 933, 935-38 (10th Cir. 2015) (unpublished) (affirming Rule 12(b)(1) dismissal without prejudice on alternative ground that plaintiff lacked prudential standing without analyzing whether dismissal should have been with or without prejudice).

7

necessarily demonstrate that VRA has prudential standing to bring its constitutional claims.

Next, VRA argues the district court erred in relying on *Kemmerer Coal* to conclude that it lacks prudential standing. There, the plaintiff brought an action in federal court, seeking to quiet title to certain coal deposits. 723 F.2d at 54. The district court granted summary judgment in the plaintiff's favor. *Id.* at 55. In doing so, the court reasoned that because the plaintiff's predecessor-in-interest—the San Rafael Fuel Company—didn't receive notice of the tax proceedings that gave rise to the defendants' tax titles, the related property assessment and subsequent tax sale were void for lack of due process. Thus, the court ruled, the plaintiff wasn't barred by the Utah statute of limitations from attacking the defendants' tax titles. *Id.*

Sitting in diversity, we reversed. *Id.* at 54, 58. After discussing the parties' arguments as to whether the plaintiff's claim was time-barred, we concluded that we need not decide that issue because the plaintiff "itself ha[d] suffered no due process injury." *Id.* at 57. Instead, we reasoned that if a constitutional violation had indeed occurred, "it was the taking of *San Rafael*'s property without due process." *Id.* Because the plaintiff was therefore improperly seeking "to advance its claim by asserting a third-party's constitutional rights," we concluded that the Utah Supreme Court would hold that the plaintiff lacked standing. *Id.* Critically, in reaching that conclusion, we specifically noted that the general rule against asserting a third-party's rights applies "to bar a grantee's assertion that its grantor's due process rights were violated." *Id.*

8

VRA attempts to distinguish *Kemmerer Coal* on its facts, arguing that it didn't involve a claim based on "any ongoing restrictions on land that could affect a subsequent owner, and certainly did not involve a 20-year assessment lien." Aplt. Br. 34. Instead, VRA argues, *Kemmerer Coal* "involved a discrete taking of title from [the original] owner"—a taking that, according to VRA, "uniquely injured only the prior landowner." *Id.* VRA suggests that unlike the plaintiff in *Kemmerer Coal*, VRA is suffering injury as the current landowner from "the existence of liens that run with the land and continue to burden the land for years, coupled with the government's enforcement of those liens and the ongoing requirement that [VRA] pay tens of millions of dollars going forward to avoid foreclosure." *Id.*

But again, the fact that VRA may be suffering an injury isn't dispositive of the prudential-standing inquiry. *See Wilderness Soc'y*, 632 F.3d at 1171. Moreover, even if we grant credence to VRA's distinctions, we find the similarities between these cases more significant. Like the plaintiff in *Kemmerer Coal*, VRA alleges a due process injury because alleged deficiencies in the Notice of Intention deprived the prior owner of notice and an opportunity to be heard. And, as in *Kemmerer Coal*, any constitutional violations the defendants committed in issuing a false and misleading Notice of Intention injured the due process rights of the prior owner, not of VRA. Accordingly, the district court didn't err in relying on *Kemmerer Coal*.

Finally, VRA relies on three additional cases to support its position that it has prudential standing. But we agree with the defendants that none of these cases actually support VRA's assertion.

9

First, VRA cites *Commonwealth Property Avocates v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011). There, we concluded that the plaintiff had prudential standing to challenge the legality of foreclosure proceedings concerning three properties that the plaintiff purchased from defaulting borrowers. *Id.* at 1196, 1201. And in doing so, we specifically rejected one defendant's argument that the plaintiff was impermissibly asserting the original borrower's rights, reasoning, "Because Plaintiff is the current owner of the real property, a foreclosure would injure Plaintiff directly. Therefore, Plaintiff also has prudential standing." *Id.* at 1201.

VRA argues that, like the plaintiff in *Commonwealth Property Advocates*, it's asserting its own rights "as the current owner of property that will be taken by foreclosure absent relief from the Court." Aplt. Br. 25. But unlike the plaintiff in *Commonwealth Property Advocates*, VRA doesn't allege any legal violations in the context of current foreclosure proceedings. Instead, VRA alleges due process violations in the context of past legislative proceedings creating a special improvement district and levying an assessment against the VR property. And if any due process rights were violated by those past proceedings, they were the due process rights of the prior owner, not VRA. Thus, VRA's reliance on *Commonwealth Property Advocates* is misplaced.

So too is its reliance on *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); that case speaks to ripeness, not prudential standing. And if anything, *Palazzolo*'s ripeness discussion undermines VRA's position. *Palazzolo* reaffirmed the general

10

rule that the rights to assert a Takings Clause claim for a physical taking and to receive just compensation belong to the owner of the property at the time of the taking because "the fact and extent of the taking are known." 533 U.S. at 628. *Palazzolo* then recognized an exception in the land-use regulation context: it explained that a regulatory Takings Clause claim may involve a ripening period. And the Court held that title transfers occurring during that period don't preclude a subsequent purchaser or successive title holder from challenging the taking when the claim ripens. *Id.*

Here, assuming the assessment against the VR property constitutes a taking,[5] "the fact and extent of [that] taking [were] known" in 2009 when the JSSD enacted the Assessment Ordinance and approved the approximately $17.5 million assessment. *See id.* Thus, at the very latest, any claim arising from the assessment ripened on September 24, 2009, when the JSSD recorded the Assessment Lien against the property. The VR property's prior owner held title at both points in time and, at either point, could have asserted a Takings Clause claim absent any ripening period.

---

[5] VRA argues that the district court erred in failing to separately analyze VRA's standing to assert its Takings Clause claim. According to VRA, "the District extracts an illegal cash payment from [VRA] every year," and that annual demand for money constitutes the taking. Aplt. Br. 49. But this claim too rests on VRA's theory that the Assessment Ordinance itself is illegal because the JSSD issued a false and misleading Notice of Intention and the defendants misused bond funds and engaged in self-dealing during construction of the improvements. And for the reasons discussed above, VRA isn't the proper party to attack the validity of the Notice or the defendants' alleged misconduct. Moreover, the annual payments result from the choice that the VR property's prior owner made to pay the assessment over 20 years, not from the defendants' actions leading to the assessment. Thus, we see no reason to separately address VRA's standing to assert its Takings Clause claim.

11

Accordingly, the title transfer at issue here didn't occur during a ripening period, and *Palazzolo* doesn't support permitting VRA, as a twice-removed successive title holder, to squeeze the juice of just compensation out of an overripe Takings Clause claim.

The facts of the third case that VRA cites—*Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011)—are more analogous to the facts present here. But like *Palazzolo*, *Pater* doesn't speak to standing. And the *Pater* plaintiffs' ownership status of the properties at issue was significantly different from VRA's ownership status here. Unlike the plaintiffs in *Pater*, who actually owned their properties when the city recorded notices of assessments against those properties, *Id.* at 1291-94, VRA didn't own the VR property when the JSSD issued the Notice of Intention, enacted the Creation Ordinance, enacted the Assessment Ordinance, and recorded the Assessment Lien. Thus, even though we said in *Pater* that "an encumbrance with the characteristics of the Notices of Assessment can be a deprivation of a property interest," *id.* at 1297, we did so when the plaintiffs who owned the properties at the time the notices were recorded asserted that their own procedural due process rights had been violated. Here, VRA didn't own the VR property when the JSSD recorded the Assessment Lien against the property. So again, if anyone was deprived of procedural due process when that lien was recorded, it was the property's prior owner—not VRA.

In sum, the cases VRA relies on don't convince us that VRA has prudential standing to assert due process and Takings Clause violations. Instead, even assuming

12

the defendants engaged in the misconduct VRA alleges, any constitutional violations arising from that misconduct violated the VR property's prior owner's constitutional rights, not VRA's. Thus, we affirm the district court's ruling that VRA lacks prudential standing to assert § 1983 claims based on those alleged violations and its order dismissing VRA's federal claims with prejudice.

That leaves VRA's five state-law claims, which the district court also dismissed with prejudice. While the district court didn't make clear which of its "four independent reasons" justified such dismissal, App. vol. 4, 802, we need not parse the district court's ruling to discern its justifications. Instead, we conclude that the district court should have simply declined to exercise supplemental jurisdiction over VRA's state-law claims after it dismissed VRA's federal claims. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Thus, we reverse the district court's order dismissing VRA's state-law claims with prejudice and remand with instructions to dismiss those claims without prejudice. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (affirming district court's dismissal of federal claims, reversing grant of summary judgment on state-law claim, and remanding with instructions to dismiss state-law claim without prejudice).