Crystal SANCHEZ, Plaintiff,

v.

PINNACLE CREDIT SERVICES, LLC, a Minnesota Limited Liability Company, Defendant.

Civil Action No. 15-cv-01041-PAB-CBS

United States District Court, D. Colorado.

Signed 07/15/2016

David Michael Larson, David M. Larson, Attorney at Law, Englewood, CO, for Plaintiff.

Irvin Allen Borenstein, Borenstein & Associates LLC, Centennial, CO, for Defendant.

### ORDER

PHILIP A. BRIMMER, United States District Judge

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 28] and Plaintiff's Motion for Summary Judgment as to Liability [Docket No. 29]. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. BACKGROUND

This case arises out of defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiff Crystal Sanchez incurred a debt to Verizon Wireless (the "account") at some time before 2014. Docket No. 28 at 2, Statement of Undisputed Material Fact ("SUMF") 4; *see* Docket No. 29 at 3, SUMF 1. Defendant Pinnacle Credit Services, LLC ("Pinnacle") purchased the account after it went into default. Docket No. 28 at 2, SUMF 5; Docket No. 29 at 3, SUMF 3. Pinnacle hired Stephens & Michaels Associates, Inc. ("SMA") to attempt to collect the account from plaintiff. Docket No. 33 at 7, ¶ 11. Defendant admits that SMA is its agent and that it is liable for SMA's actions. Docket No. 29 at 6, SUMF 18.

On June 30, 2014, plaintiff contacted SMA regarding the account. Docket No. 28 at 2, SUMF 7; Docket No. 29 at 3, SUMF 5. A transcription of the June 30, 2014 phone call states, in relevant part:

> [SMA representative]: Good morning this is Ryan, can I help you? Good afternoon rather.
>
> Plaintiff: Yes, this is Crystal Sanchez and Pinnacle Credit Services told me to call you guys for my Verizon Wireless account.
>
> [SMA representative]: No problem ma'am I'd be happy to help you with that.
>
> * * *
>
> [SMA representative]: Okay ma'am, I do see your information here. It looks like they did place your Verizon account in our office. It's from, let's look here, it's a balance of $1,256.20.

Plaintiff: Yes

[SMA representative]: And is that something you would like to take care of today?

Plaintiff: Um, what is it for?

[SMA representative]: Uh, it looks like you had an account with Verizon in 2010. It was closed in 2011. At the time the account was closed, they charged off an amount of $2,144.00

Plaintiff: Okay

[SMA representative]: That's why you are now in collections. I do want to tell you ma'am that your account qualifies for an extremely low settlement. So if it's something you want to clear your name of we can assist you with that.

Plaintiff: Okay, how low?

[SMA representative]: It looks like it qualifies for an extremely low settlement of $565.29, that's saving you almost $700.00 dollars.

Plaintiff: Okay. Well what do you want me to do on it?

[SMA representative]: Um, we do debit, credit, check or saving by phone at no additional cost.

Plaintiff: Okay, so I need to pay it all today?

[SMA representative]: Uh, yes ma'am

Plaintiff: Okay, I pay by money order not a credit card.

[SMA representative]: Okay, cause once that amount clears our office your account will be closed as settled in full. So is there any account you can attach it to today where we can guarantee you that settlement?

Plaintiff: So you said how much do I have to pay now?

[SMA representative]: It would be $565.29 but if you can't do that entire amount, I can actually split it into a couple of payments that's what I am authorized to do. If you wanna do half for today and the other half in July, it would be 2 payments of $282.64.

Plaintiff: Okay so how much is total owed right now?

[SMA representative]: The total balance is $1,256.20.

Plaintiff: Okay, but I don't agree with that at all. I don't know how it got that high. That's wrong.

[SMA representative]: I think that's part of the reason you know, there's as a, like I said there's a settlement for it and not all of them qualify for this low of a settlement. I'm not sure what happened but we are alleviating $700.00 dollars of the bill so.

Plaintiff: Okay, yeah, I don't owe that much on Verizon. I, not even close. You know I don't owe that much.

[SMA representative]: Okay, so are you, you don't wanna take advantage of the settlement?

Plaintiff: I wanna settle but I don't know, probably for less. I wanna settle for less.

[SMA representative]: Okay, I mean the only thing I can do ma'am, that is the low settlement. I can make a request to our client to see if they will accept whatever it is you are offering but chances are they say no.

Plaintiff: Yeah, cause I owe less than $500.00 dollars on this total, you know.

[SMA representative]: Okay

Plaintiff: I know I don't owe Verizon more than $500.00 dollars.

[SMA representative]: Okay, so you are saying $500 is your max?

Plaintiff: Yes

* * *

[SMA representative]: I will put that request in for you today ma'am and hopefully we get a response back, chances are they may say no to that but if it's something where they will come back with a counter-offer, you know, hopefully they will hopefully be willing

to work with you. That way we can get this cleared up for you.

Plaintiff: Yeah, this is messing up my credit report, so I mean, what to [sic] I have to do to get this off my credit report?

[SMA representative]: Um, well you just have to take care of it through our office because at this point you are in collections with it we do represent Pinnacol [sic] Credit Services but what I can tell you is once to pay it. We will report that status that it's been paid to our client and they make requests every 15th of the month to update credit bureaus and then.

Plaintiff: So I have, ok go ahead, go ahead.

[SMA representative]: They won't report a change in status for 30 days from the date of the payment so, say for example of you were to pay it today you could check in 30 days.

Plaintiff: Oh, okay, so I have to pay it to get it off my credit report right?

[SMA representative]: That's correct.

Plaintiff: Okay and that's the only way?

[SMA representative]: Mm-hmm, yeah there's

Plaintiff: So it's gonna, it's it's just gonna stay on my credit report until it's paid off then right?

[SMA representative]: That's correct

Plaintiff: Okay.

Docket No. 28–1.[1]

On twenty-two occasions between July 5, 2014 and April 26, 2015, the defendant communicated information regarding the account, including the name of the original creditor, the balance due on the account, plaintiff's name, telephone number and ad-

dress, the defendant's client's name (Verizon Wireless), the current balance, the amount past due, the billing date, the date of delinquency to Experian, Equifax, and Transunion without communicating that the account was disputed. Docket No. 29 at 4, SUMF 9. Defendant was not required to report the account to the credit reporting agencies. *Id.* at 5, SUMF 13.

The defendant does not know if plaintiff disputed the account with the defendant during plaintiff's telephone call with defendant's agent SMA. Docket No. 29 at 6, SUMF 14. SMA's account notes regarding the conversation state, in part: "Says she owes less—500." *Id.*, SUMF 15.

On April 24, 2015, plaintiff filed her complaint in County Court for Pueblo County, Colorado, alleging one FDCPA claim, that the "statement(s) and/or act(s) and/or omission(s) of the Defendant constitute a violation of the FDCPA § 1692e preface and/or e(2)(A) and/or e(8) and/or e(10)". Docket No. 10 at 24 ¶ 236. On May 18, 2015, defendant removed the case to this Court. Docket No. 1.

On December 11, 2015, plaintiff filed her summary judgment motion. Docket No. 29. Plaintiff argues that the undisputed facts show: (1) SMA's representation to plaintiff that she had to pay the account to get it off the credit bureau reports and that the account would stay on the credit bureau reports until it is paid violates the FDCPA; and (2) defendant's twenty-two communications to Experian, Equifax, and Transunion between July 5, 2014 and April 26, 2015 regarding the account did not identify the account as disputed and thus violated the FDCPA. *Id.* at 10-17.

---

1. Plaintiff states that this transcript is "partially accurate" but does not dispute the accuracy of any specific portion of this transcript. *See* Docket No. 29 at 3, SUMF 6. For purposes of resolving the parties' cross motions for summary judgment, the Court treats the transcript proffered by defendant as an accurate transcription of plaintiff's June 30, 2014 phone call with SMA.

On December 11, 2015, defendant filed its summary judgment motion. Docket No. 28. Defendant argues that plaintiff did not dispute the debt during the June 30, 2014 phone call, and therefore it had no reason to report the debt as disputed in its communications to the credit bureaus. *Id.* at 7-11.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir.2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.1997). Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir.2001) (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.1994) (citing *Celotex Corp. v. Ca-*

*trett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir.2010). However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits and attached exhibits are rendered in the light most favorable to the non-prevailing party. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir.2004). Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000) (internal quotation marks omitted).

## III. ANALYSIS

The FDCPA was created in part to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e; *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.2002). It prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To that end, the FDCPA enumerates a non-exhaustive list of prohibited debt collector conduct that gives rise to liability under 15 U.S.C. § 1692e. The

statute specifically prohibits the false representation of the "character, amount, or legal status of any debt," *id.* at § 1692e(2)(A), and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* at § 1692e(10). It further prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* at § 1692e(8). The FDCPA provides for statutory damages of $1000, as well as costs and attorney's fees, in case of violation, regardless of whether plaintiff has shown any actual damage. *Id.* at § 1692k.

## A. Whether Plaintiff Alleged a Claim Based on SMA's Statement that the Account would Remain on Plaintiff's Credit Report Until Paid

Defendant argues that plaintiff's summary judgment motion "raises for the first time an alleged FDCPA violation based upon a statement from the SMA representative that the debt had to be paid to get it off of her credit history and the debt will stay on her credit history until it is paid." Docket No. 32 at 4–5. Defendant asks that plaintiff's argument be stricken, *id.*, citing *Baker v. Penn Mutual Life Ins. Co.*, 788 F.2d 650, 656 (10th Cir.1986), and *United States ex rel. Told v. Interwest Constr. Co., Inc.*, 267 Fed.Appx. 807, 808 (10th Cir. 2008) (unpublished), for the proposition that a plaintiff may not raise an argument for the first time in a summary judgment motion. Docket No. 32 at 4.

The Tenth Circuit noted in *Baker* that "the district court would have been well within its discretion" to exclude an argument not raised until plaintiff's response to defendant's motion to summary judgment, but because the district "court elected to address the issue ... we do so as well in order to put it to rest." 788 F.2d at 656. In *Told*, the district court granted summary judgment for defendant because plaintiff's claims were time barred and "insofar as [plaintiff's] opposition to [defendant's] motion for summary judgment could be read to assert a new allegation of a timely claim under the [False Claims Act], such a claim would not be allowed at the summary judgment stage. Otherwise ... [defendant] would be unfairly prejudiced." 267 Fed. Appx. at 808. The Tenth Circuit agreed and held that "requiring [defendant] to defend against this claim late in the proceedings would place a serious burden on [defendant], effectively putting the parties back at square one." *Id.* at 810–11 (internal quotation marks omitted).

Plaintiff makes two arguments in response: (1) defendant had notice of this alleged FDCPA violation because plaintiff inquired about it during the deposition of Robert Castle, defendant's Rule 30(b)(6) designee, and (2) the notice pleading standard of the Federal Rules of Civil Procedure does not require plaintiff "to list out each specific violation by the Defendant in her Complaint—that would be a fact pleading standard." Docket No. 36 at 3.

Regarding the first argument, plaintiff provides no basis for, or authority to support, her contention that an inquiry during a Rule 30(b)(6) deposition into the facts underlying a claim constitutes sufficient notice to the defendant to state a new claim in her summary judgment motion. The Court rejects this argument.

 Regarding the second argument, plaintiff fails to identify any allegation in her complaint that would put defendant on notice of plaintiff's theory that defendant violated the FDCPA by the SMA representative's statements to plaintiff that the account would remain on her credit report until paid. However, "an issue raised for the first time in a motion for summary

judgment may properly be considered a request to amend the complaint" pursuant to Fed. R. Civ. P. 15. *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir.2011) (citing *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n. 9 (10th Cir.1998)).

Whether to grant leave to amend the pleadings "is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204–05 (10th Cir. 2006). Rule 15 instructs that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When the deadline for amendment of pleadings in the scheduling order has passed, however, Rule 16(b) applies and states that a scheduling order deadline "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P 16(b)(4). The deadline for amendment of pleadings in this case was August 10, 2015. Docket No. 16 at 8. In *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir.2014), the Tenth Circuit held that "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Id.* at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D.Colo.2001)).

Plaintiff has never requested leave to amend her complaint to add allegations that the SMA representative's statement that the account would remain on plaintiff's credit until paid violated the FDCPA or argued good cause for not raising this claim prior to her motion for summary judgment. "[U]ntimeliness alone is a sufficient reason to deny leave to amend ... when the party filing the motion has no

adequate explanation for the delay." *Pater*, 646 F.3d at 1299 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). Plaintiff thus fails to establish good cause for amendment of her complaint. Accordingly, the Court declines to consider plaintiff's argument that defendant violated the FDCPA by advising her the debt had to be repaid to remove it from her credit report.

## B. Whether Plaintiff Disputed the Debt During the June 30, 2014 Phone Call

Plaintiff argues that she disputed the debt during the June 30, 2014 phone call with SMA. Docket No. 36 at 3; *see also* Docket No. 29 at 3, SUMF 7. Specifically, plaintiff argues that she disputed the debt through the following statements: "Okay, but I don't agree with that at all, I don't know how it got that high. That's wrong."; "Okay, yeah, cause I don't owe that much on Verizon, I, not even close. You know I don't owe that much."; "Yeah, cause I owe less than $500.00 on this total, you know."; and "I know I don't owe Verizon more than $500.00." Docket No. 36 at 3-4. Defendant argues that plaintiff did not "call into question or oppose[ ] the debt" and did "not use the word 'dispute' in discussing the debt." Docket No. 28 at 9. Defendant contends that, "[w]hen read as a whole, Plaintiff's statements during the Phone Call establish her acknowledgment that she is responsible for the debt and she sought to negotiate a lower payment." *Id.*[2]

It is clear that plaintiff disputed the amount of her debt. This Court and others have previously held that disputing the amount of a debt is sufficient to dispute

2. Defendant relies heavily on *Dixon v. RJM Acquisitions, LLC*, No. 13–cv–02436–MSK–MJW, 2015 WL 729388 (D.Colo. Feb. 17, 2015, for its interpretation of plaintiff's conversation with SMA. *See* Docket No. 28 at 6,

8, 10. However, the Tenth Circuit reversed the district court in *Dixon*, *Dixon v. RJM Acquisitions, LLC*, 640 Fed.Appx. 793 (10th Cir.2016) (unpublished), undermining the basis for defendant's reliance.

the debt itself. *See, e.g., Irvine v. I.C. System, Inc.*, 176 F. Supp. 3d. 1054, 1061–62, 2016 WL 1258586, at *5 (D.Colo. Mar. 31, 2016); *Boatley v. Diem Corp.*, 2004 WL 5315892, at *3 (D.Ariz. Mar. 24, 2004) (granting summary judgment on plaintiff's § 1692e(8) claim because plaintiff disputed the amount of the debt listed on her consumer report, but defendants failed to communicate the disputed status of plaintiff's debt to the consumer reporting agency); *Palmer v. I.C. Systems, Inc.*, 2005 WL 3001877, at *9 (N.D.Cal. Nov. 8, 2005) (plaintiff's inquiry about additional client charges, which disputed amount of debt, provides basis for violation of § 1692e(8)); *cf.* 15 U.S.C. § 1692g(a)(3) (whether consumer "disputes the validity of the debt, or any portion thereof"). Defendant does not deny that plaintiff disputed at least a portion of the debt.

Based on the foregoing, the Court finds plaintiff's statements during the June 30, 2014 phone call were sufficient to communicate to defendant that plaintiff disputed the debt.

### C. Whether Defendant's Communications to the Credit Reporting Agencies Violated the FDCPA

■ Plaintiff argues that defendant violated §§ 1692e, 1692e(2)(A), 1692(e)(8), and 1692(e)(10) of the FDCPA by making twenty-two communications to Experian, Equifax, and Transunion between July 5, 2014 and April 26, 2015 without reporting plaintiff's debt as disputed. Docket No. 29 at 11-13. Plaintiff submits that *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir.2013), establishes defendant's liability under FDCPA for its communications to the credit reporting agen-

cies. Docket No. 29 at 12. In *Llewellyn*, the court held that "a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt *unless* the debt collector knows of the dispute and elects to report to a [credit reporting agency]." 711 F.3d at 1189 (emphasis in original).

Section 1692e(8) prohibits the communication of "credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Defendant does not contest that it made twenty-two communications to the credit reporting agencies and that it did not report the account as disputed. *See* Docket No. 29 at 4, SUMF 9. Defendant admits that it was not required to report the account to the credit reporting agencies. *Id.* at 5, SUMF 13. The Court finds that the undisputed facts establish that defendant made twenty-two elective communications to the credit reporting agencies without identifying the account as disputed. Accordingly, the Court finds that defendant violated § 1692e(8) of the FDCPA.[3] Therefore, summary judgment for plaintiff is appropriate. However, because the issue of damages remains unresolved, the Court will not vacate the trial preparation conference and trial in this matter.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 28] is **GRANTED** in part and **DENIED** in part. It is further

3. Notwithstanding plaintiff's general contention that defendant violated §§ 1692e, 1692e(2)(A), 1692(e)(8), and 1692(e)(10) of the FDCPA, Docket No. 29 at 11-13, plaintiff's arguments and authority regarding defendant's liability relate primarily to § 1692(e)(8). *See id.* at 13–16. In the absence of focused argumentation from plaintiff and because defendant's conduct violated § 1692e(8), the Court finds it unnecessary to decide whether defendant's conduct also violated §§ 1692e, 1692e(2)(A), and 1692(e)(10).

**ORDERED** that Plaintiff's Motion for Summary Judgment as to Liability [Docket No. 29] is **GRANTED** in part and **DENIED** in part.

DATED July 15, 2016.