**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

M.A.K. INVESTMENT GROUP, LLC, a
Colorado limited liability company,

     Plaintiff - Appellant,

v.

CITY OF GLENDALE, a political
subdivision of the State of Colorado;
GLENDALE URBAN RENEWAL
AUTHORITY, a Colorado urban renewal
authority,

     Defendants - Appellees.

No. 16-1492
(D.C. No. 1:15-CV-02353-RBJ)
(D. Colo.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

This matter is before the court on the Appellees' *Petition for En Banc
Determination, or, In the Alternative, for Panel Rehearing.* We also have a response from
the appellant.

Upon consideration, that part of the *Petition* seeking panel rehearing is granted in
part and to the extent of the amendments made to the attached revised Opinion. Panel
rehearing is otherwise denied by the original panel members. The Clerk is directed to file
the attached revised decision effective the date of this order.

The *Petition* and response were also circulated to all the members of the court who are in regular active service. *See* Fed. R. App. P. 35(a). As no member on the original panel or the en banc court requested that a poll be called, the request for en banc determination and reconsideration is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

**July 31, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

M.A.K. INVESTMENT GROUP, LLC,
a Colorado limited liability company,

Plaintiff - Appellant,

v.

CITY OF GLENDALE, a political
subdivision of the State of Colorado;
and GLENDALE URBAN RENEWAL
AUTHORITY, a Colorado urban
renewal authority,

Defendants - Appellees.

No. 16-1492

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:15-CV-02353-RBJ)**

---

R. Alexander Pilmer (Michael A. Onufer, and Lianna Bash on Opening Brief
replaced by Allison Ozurovich on Reply Brief, Kirkland and Ellis LLP, Los
Angeles, California, and Timothy G. Atkinson, Russell W. Kemp, and James R.
Silvestro, Ireland Stapleton Pryor & Pascoe, P.C., Denver, Colorado, with him on
the briefs), Kirkland and Ellis LLP, Los Angeles, California, for Appellant.

Michael P. Zwiebel (Jeffrey A. Springer, Jason C. Astle, and Matthew R.
Giacomoni with him on the brief), Springer & Steinberg, P.C., Denver, Colorado,
for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **SEYMOUR**, and **McHUGH**, Circuit
Judges.

**TYMKOVICH**, Chief Judge.

M.A.K. Investment Group, LLC owns several parcels of property in Glendale, Colorado. The City of Glendale adopted a resolution declaring several of M.A.K.'s parcels "blighted" under state law. Glendale never notified M.A.K. of its resolution or the legal consequences flowing from it. In fact, the blight resolution began a seven-year window in which the City could begin condemnation proceedings against M.A.K.'s property. It also started the clock on a thirty-day window in which M.A.K. had a right to seek judicial review of the blight resolution under state law. Receiving no notice, M.A.K. did not timely seek review.

M.A.K. argues Colorado's Urban Renewal statute— both on its face and as-applied to M.A.K.—violates due process because it does not require municipalities to notify property owners about (1) an adverse blight determination, or (2) the thirty days owners have to seek review. We conclude M.A.K.'s allegations state a claim that the statute is unconstitutional as applied to M.A.K. because M.A.K. did not receive notice that Glendale found its property blighted. Since we hold the statute violated due process as applied to M.A.K., we

need not decide whether the statute is unconstitutional on its face.[1]  As for

M.A.K.'s second argument, we hold that due process did not require Glendale to

inform M.A.K. about the thirty-day review window.

## I.  Background

We begin by describing the relevant statutory framework.

### A.  Colorado's urban renewal statute

Colorado's Urban Renewal statute declares eliminating "blighted" areas to

be a public use for which municipalities can use their power of eminent domain.

Colo. Rev. Stat. § 31-25-102.  The law enables municipalities to eventually

transfer blighted private property to other private parties or public entities for

redevelopment.  After a municipality determines an area is blighted, it can begin

condemnation proceedings against the blighted property at any time for seven

years following the blight determination.  § 31-25-105.5(2)(a)(I).  The blight

determination is therefore not a complete taking in the constitutional sense, but it

slates the property for possible condemnation in the future.

---

[1]  A facial challenge "is not limited to [a] plaintiff['s] particular case," *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010), but instead asserts that "the terms of the statute itself" violate the Constitution.  *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012).  An as-applied challenge, by contrast, asserts "that even if the statute [is] not unconstitutional in all its applications it [is] at least unconstitutional in its particular application to" the plaintiff.  *City of Chicago v. Morales*, 527 U.S. 41, 78 n.1 (1999).

To label a property blighted, municipalities must meet certain statutory requirements.[2]  Municipalities must find that the property meets "at least five" of the eleven statutory blight factors.  *See* § 31-25-105.5(5)(a).[3]  Those findings must be made at a public hearing.  § 31-25-107(1)(a), (3)(a).  And the findings

_____

[2]  We use "municipality" or "city" throughout this opinion although other entities, such as counties, are also eligible to use condemnation powers.

[3]  "'Blighted area' means an area that . . . substantially impairs or arrests the sound growth of the municipality, retards the provision of housing accommodations, or constitutes an economic or social liability, and is a menace to the public health, safety, morals, or welfare."  Colo. Rev. Stat. Ann. § 31-25-103(2).  The factors that go into this determination include the presence of:
> (a) Slum, deteriorated, or deteriorating structures;
> (b) Predominance of defective or inadequate street layout;
> (c) Faulty lot layout in relation to size, adequacy, accessibility, or usefulness;
> (d) Unsanitary or unsafe conditions;
> (e) Deterioration of site or other improvements;
> (f) Unusual topography or inadequate public improvements or utilities;
> (g) Defective or unusual conditions of title rendering the title nonmarketable;
> (h) The existence of conditions that endanger life or property by fire or other causes;
> (i) Buildings that are unsafe or unhealthy for persons to live or work in because of building code violations, dilapidation, deterioration, defective design, physical construction, or faulty or inadequate facilities;
> (j) Environmental contamination of buildings or property;
> . . .
> (k.5) The existence of health, safety, or welfare factors requiring high levels of municipal services or substantial physical underutilization or vacancy of sites, buildings, or other improvements . . . .

*Id.*

must be based on "reasonably current information obtained at the time the blight determination is made." § 31-25-105.5(2)(a)(I).

The Act allows property owners to challenge a city's blight determination. "Any owner of property located within the urban renewal area may challenge the determination of blight made by the governing body . . . by filing, not later than thirty days after the date the determination of blight is made, a civil action in district court for the county in which the property is located . . . ." § 31-25-105.5(2)(b). The civil action is "for judicial review of the exercise of discretion on the part of the governing body in making the determination of blight," and "the governing body shall have the burden of proving that, in making its determination of blight, it has neither exceeded its jurisdiction nor abused its discretion." *Id.*

As for notice, the statute requires a city to notify property owners in two instances: (1) when the city begins a study regarding blight involving their properties, and (2) when the city will hold a hearing regarding its intention to acquire property for public or private redevelopment. *See* § 31-25-107(1)(b), (3)(b).

But when it comes to the *results* of these blight hearings, the notice requirement depends on whether the city found the property at issue blighted or not. Strangely enough, Colorado's statute requires a city to mail notice to those whose property it does *not* find blighted, but does not require a city to notify

those whose property it *does* find blighted. *See* § 31-25-107(1)(b). The statute also takes care to note that "[n]otwithstanding any other provision of law, any determination made by the governing body . . . shall be deemed a legislative determination and shall not be deemed a quasi-judicial determination." § 31-25-105.5(2)(c). This has consequences we will discuss below.

## B. *The blight determination*

According to its complaint, M.A.K. owns several parcels of real property in Glendale, Colorado. Seeking to redevelop its property, M.A.K. began working with the city of Glendale on a private redevelopment plan.

In 2013, the City of Glendale embarked on a "Riverwalk Urban Renewal Plan." The Plan entailed declaring a group of properties blighted under the Urban Renewal Law, allowing the City to condemn the properties and commence their private redevelopment. M.A.K.'s property was among the properties affected by the Plan. In April of the same year, Glendale notified M.A.K. it was commencing a study on whether an area that included M.A.K.'s property was blighted. The notice explained that Glendale would hold a hearing on May 7, 2013 to approve the Riverwalk Urban Renewal Plan. According to M.A.K.'s complaint, the notice did not explain that the hearing related to the possibility of future condemnation proceedings against M.A.K.'s property.

After receiving this letter, M.A.K. claims one of its principals met with a representative of Glendale and asked what "blight" meant and whether M.A.K.

-6-

should take any action in response. The representative answered that M.A.K. "did not need to worry about the notice." App. 15. Having worked with the City representative before, M.A.K. relied on his statement and did not attend the hearing.

At the May 7 hearing, Glendale found M.A.K.'s property blighted pursuant to the statutory factors. Glendale did not notify M.A.K. of this determination. Nor did Glendale inform M.A.K. of the thirty-day window to challenge it in state court. For that reason, M.A.K. claims it did not learn about the blight determination until November 2013, when it engaged a real estate attorney to assist in M.A.K.'s private redevelopment of its property. By that time, the thirty-day window to challenge the determination had closed.

## C. The suit

M.A.K. brought suit against Glendale under 42 U.S.C. § 1983, challenging Colorado's Urban Renewal statute both facially and as applied to its property. M.A.K. alleged the statute violated both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The district court granted Glendale's motion to dismiss both claims. In the district court's view, M.A.K. did not have due process rights at stake because the blight determination was legislative in nature. M.A.K.'s equal protection claim, on the other hand, failed because the statute did not treat M.A.K. differently from others similarly situated. M.A.K. appealed only the court's dismissal of its procedural due process claim.

## II. Analysis

M.A.K. argues Colorado's Urban Renewal Statute fails due process as applied to M.A.K. because (1) it does not provide for adequate notice when a city finds a landowner's property blighted, (2) it does not provide for notice of the thirty-day review period, and (3) M.A.K. in fact did not know about the blight determination or the right of review within thirty days. We agree only with its first proposition: the city's failure to notify M.A.K. of the blight determination violated M.A.K.'s right to due process.[4]

We "review the grant of a Rule 12(b)(6) motion to dismiss de novo." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). In doing so, we "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). A district court must deny a motion to dismiss if the complaint provides "facts sufficient to state a claim to relief that is plausible on its face." *Id.* (internal quotation omitted).

---

[4] As previously mentioned, M.A.K. also argues the statute's failure to provide for notice violates due process on its face, but we do not reach that question. Specifically, we do not decide whether the lack of notice here violates due process even when the property owner does, in fact, learn about the blight determination in time to seek review.

Since M.A.K. claims the statute's application in this case violated its procedural due process rights, we undertake the familiar "two-step inquiry" for procedural due process cases. *See Pater v. City of Casper*, 646 F.3d 1290, 1293 (10th Cir. 2011). First, "we ask whether the City's actions deprived plaintiffs of a constitutionally protected property interest." *Id.* "If plaintiffs can satisfy this requirement, we then consider whether they were afforded the appropriate level of process." *Id.* "In so doing, we note the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 1298 (internal quotation marks and citation omitted).

Accordingly, we must answer two questions in this case. First, does M.A.K. have a constitutionally protected property interest at stake? Second, if it does, did Glendale provide M.A.K. sufficient notice that its property interests were in danger? We take each question in turn.

### A. *Protected property interest*

The blight determination does not effect a complete taking of M.A.K.'s property. As explained above, it is only the first step toward condemnation. The parties therefore debate whether M.A.K. has a protected property interest at stake in this case at all.

M.A.K. contends it has a property interest in the statutory right to seek review within thirty days of the blight finding. We agree with M.A.K. that it has a protected property right in the statutory cause of action.[5]

Colorado's statute gives property owners a right to "judicial review of the exercise of discretion on the part of the governing body in making the determination of blight." Colo. Rev. Stat. § 31-25-105.5(2)(b). And in the proceeding, the city has the burden of proving that "it has neither exceeded its jurisdiction nor abused its discretion." *Id.* This state-created cause of action constitutes a protected property interest.

The Supreme Court's decision in *Logan v. Zimmerman Brush Company*, 455 U.S. 422 (1982), makes that much clear. There, the plaintiff's state-law

---

[5] M.A.K. also argued it has a property interest because the blight determination adversely affects real property interests. Since we find M.A.K. has a property interest in the cause of action for review, we do not decide this question. In particular, though the parties have briefed the question, we do not decide whether the blight determination is a legislative decision in which no property right can exist. *See Onyx Properties LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 838 F.3d 1039, 1044–46 (10th Cir. 2016), *cert. denied sub nom. Onyx Properties, LLC v. Bd. of Cty. Comm'rs of Elbert Cty.*, 137 S. Ct. 1815 (2017). Our decision rests solely on M.A.K.'s property right in its statutory cause of action for abuse-of-discretion review.

We note that, contrary to the district court's view, whether or not the blight determination is legislative does not control our analysis. Even if due process rights do not attach to the blight determination itself, they attach to the state-created cause of action. *See Logan v. Zimmerman Brush Company*, 455 U.S. 422, 432 (1982) ("While the legislature may elect not to confer a property interest, . . . it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.").

-10-

cause of action was dismissed because the state's Fair Employment Practices Commission, through no fault of the plaintiff's, failed to hold a timely conference. *Id.* at 424–427. The Supreme Court explained that "the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Id.* at 429. "The hallmark of property," the Court emphasized, "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Id.* at 430. The Court explained the right to bring a cause of action is just such an entitlement, and therefore "a species of property protected by the Fourteenth Amendment's Due Process Clause." *Id.* at 428.

Under *Logan*, then, M.A.K. had a property interest in its statutory cause of action to challenge the blight determination process for abuse of discretion.[6]

Glendale objects there can be no due process right to a hearing alone

---

[6] Other cases reach a similar conclusion. *See, e.g.*, *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (reiterating *Logan*'s conclusion); *Gibbes v. Zimmerman*, 290 U.S. 326, 332 (1933) ("a vested cause of action is property and is protected from arbitrary interference"); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 n.4 (1st Cir. 2006) (recognizing a cause of action is a property right protected by due process); *Webster v. City of Houston*, 735 F.2d 838, 844 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (same); *Holman v. Hilton*, 712 F.2d 854, 858 (3d Cir. 1983); *D.C. v. Beretta U.S.A. Corp.*, 940 A.2d 163, 173 (D.C. 2008) (same); *Albert v. Allied Glove Corp.*, 944 So. 2d 1, 6 (Miss. 2006) (same); *State By & Through Colorado State Claims Bd. of Div. of Risk Mgmt. v. DeFoor*, 824 P.2d 783, 792 (Colo. 1992) (same); *Williams v. Hofley Mfg. Co.*, 424 N.W.2d 278, 282 (1988) (same); *LaBarre v. Payne*, 329 S.E.2d 533, 535 (1985) (same).

because "[p]rocess is not an end in itself" but is meant to "protect a substantive interest to which the individual has a legitimate claim of entitlement." *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).[7] But Glendale's reasoning misses the mark. The right to challenge the blight determination is not just a right to a hearing for its own sake, but a right to *overturn* a blight determination that was an abuse of discretion pursuant to the statute. *See* Colo. Rev. Stat. Ann. § 31-25-103(2); § 31-25-105.5(5)(a).

*Olim* and *Crown Point*—cases on which Glendale relies heavily—make this point clear. In *Olim*, an inmate brought suit against state officials for transferring him to a different prison because the transfer committee violated a state procedural rule. *Id.* at 243. The state's regulations, however, placed "no substantive limitations on official discretion" regarding transfer decisions. *Id.* at 249. The Court held Olim had no property interest in the transfer. When a decision-maker can "deny the requested relief for any constitutionally permissible reason or for no reason at all," the Court explained, there is no substantive right at stake. *Id.* But when states do "plac[e] substantive limitations on official discretion," they "create[] a protected liberty interest." *Id.*

We noted the same in *Crown Point I, LLC v. Intermountain Rural Electric*

---

[7] M.A.K. points out that *Olim* is a case about liberty interests, not property interests. That is true, but as our decision in *Crown Point I, LLC v. Intermountain Rural Electric Association* shows, 319 F.3d 1211 (10th Cir. 2003), this principle applies in the realm of property interests too.

-12-

*Association*, 319 F.3d 1211 (10th Cir. 2003). In that case, Crown Point I, LLC claimed a town's approval of an electrical transmission line running through its property violated due process because the town did not hold a public hearing required by a town ordinance. *Id.* at 1213–14. We stated the general rule that "[a] property interest exists if discretion is limited by the procedures in question" and "the procedures . . . require a particular outcome." *Id.* at 1217. Applying this rule, we held Crown Point did not have a protected property interest in the hearing because there were "no criteria . . . that would limit [the town's] discretion." *Id.* at 1216–17. Crown Point simply could not claim an entitlement to any particular outcome—even if it had the hearing, the town could do as it pleased for any reason or no reason. *Id.*

Here, in marked contrast to *Olim* and *Crown Point*, Colorado's statute limits a city council's discretion by providing eleven exclusive factors for its decision. *See* Colo. Rev. Stat. Ann. § 31-25-103(2); § 31-25-105.5(5)(a). It then provides property owners a right to judicial review for abuse of discretion. The reviewing court cannot deny relief "for no reason at all," as in *Olim* and *Crown Point*, but instead must review the city council's application of the statutory factors. The opportunity for review is not, then, an empty formality: if the record clearly showed Glendale abused its discretion, M.A.K. would be *entitled* to a favorable outcome. Under the Supreme Court's case law, that sort of entitlement is a property right.

Glendale ignores *Olim* and *Crown Point*'s reasoning and argues instead that M.A.K. cannot have a property interest in judicial review because the blight determination does not adversely affect its property value. Indeed, at oral argument, Glendale counter-intuitively suggested the blight determination's effect on property values is so speculative that it might *increase*, not decrease M.A.K.'s property values. That being so, Glendale claims that even if the city council *had* abused its discretion and M.A.K. *were* entitled to a favorable outcome at the review proceeding, M.A.K. has no protected property right because its property values would not necessarily be harmed in the real world.

We disagree with this contention. First of all, we are not convinced the blight determination's effects do not burden M.A.K.'s real property interests. M.A.K. claims the blight determination depreciates its property values and limits its ability to sell its properties or obtain a mortgage. And M.A.K. would have to bear that burden for *up to seven years*. Both the Supreme Court and our court have suggested such consequences are a serious deprivation of property interests. *See Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); *Pater v. City of Casper*, 646 F.3d 1290, 1295 (10th Cir. 2011) (concluding fines entered against a property burdened protected property interests because the fines "had the effect of

-14-

lowering the market value of the burdened properties or limiting their alienability").

But more importantly, the extent to which the blight determination burdens M.A.K.'s real property does not matter when determining if a property interest exists in the *cause of action*. M.A.K. has a procedural property interest in obtaining review simply because the statute provides an entitlement to reversal for abuse of discretion. That is all. M.A.K. cannot be deprived of this state-given cause of action without due process, even if overturning the blight determination would only minimally affect its property values. *Cf. Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding "the denial of procedural due process should be actionable for nominal damages without proof of actual injury").

In sum, M.A.K. clearly has a protected property interest in the statutory right to judicial review of the blight determination.

### B. Notice required

Since M.A.K. has a property right at stake in the state-law-created cause of action, we must decide what type of notice due process required. The statute provides for notice whenever a city council will hold a hearing with respect to an urban renewal plan as well as whenever it commissions a study regarding blight. But it does not require notice to property owners after a city council determines their property is blighted, even though that determination starts the clock on the thirty days landowners have to exercise their right to challenge the determination.

-15-

M.A.K. argues due process required the city to provide two types of notice: first, that the city found its property blighted; second, that M.A.K. had thirty days to challenge that determination.

### 1. Notice of the blight determination

For decades, the Supreme Court has followed, and we have applied, the rule from *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950): due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).[8] "[A] mere gesture is not due process." *Id.* at 315. Rather, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* In keeping with this principle, the "general rule" is that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962).

Applying this intuitive rule, we conclude due process required Glendale to provide M.A.K. with direct notice of the adverse blight determination. In

---

[8] *See, e.g., United States v. Cervantes*, 795 F.3d 1189, 1190 (10th Cir. 2015); *Darr v. Town of Telluride*, 495 F.3d 1243, 1254 (10th Cir. 2007); *Aero-Med., Inc. v. United States*, 23 F.3d 328, 330 (10th Cir. 1994); *Reliable Elec. Co. v. Olson Const. Co.*, 726 F.2d 620, 622 (10th Cir. 1984).

contemporary terms this means notice had to be mailed, emailed, or personally served. Without the minimal step of actual notice, M.A.K. was left unaware of the potentially looming condemnation action, and so had little reason to even investigate whether it could challenge the blight determination that authorizes that action. As a consequence, M.A.K. lost its statutory right to review within thirty days. In other words, M.A.K.'s ability to preserve its *property right* in the *statutory right of review* depended on its knowledge of the simple fact the blight finding *existed*.

When in the absence of notice, property owners are likely to lose a property right—in a cause of action or otherwise—the *Mullane* rule applies. At that point, the state must take reasonable steps to provide enough notice for reasonable persons to realize they must investigate possible remedies.

Glendale argues property owners cannot sit on their rights and that they have some duty of self-preservation to stay abreast of legislative pronouncements. But while it is true M.A.K. could have attended the City's hearing and learned of the blight resolution, "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983).

The Court reemphasized this principle in *Jones v. Flowers*, 547 U.S. 220 (2006). There, the plaintiff sued the state for failing to send further notice of a tax sale after its first mailed notice returned undeliverable. *Id.* at 223. Though

state law required the plaintiff to notify the secretary of state of his new address, and the Court also recognized it was "common knowledge that property may be subject to government taking when taxes are not paid," the Court nonetheless held the plaintiff's deficiencies did not excuse the government from following *Mullane*'s rule. So too here. Even if M.A.K. "should have been more diligent," that fact "does not excuse the government from complying with its constitutional obligation of notice." *Id.* at 232, 234. And, we note, it is not as if M.A.K. ignored notice of the blight hearing altogether. M.A.K. alleges it asked a City representative what the notice meant, and the representative told M.A.K. it "did not need to worry about the notice." App. 15. It would be perverse to hold such notice satisfied due process in M.A.K.'s case.[9]

A city's constitutional obligation is to use means "such as one desirous of actually informing the absentee might reasonably adopt." *Mullane*, 339 U.S. at 315. In this case, those means were direct notice—typically by mail, email, or personal service. Glendale had the names and addresses of the property owners affected by their blight determinations. And the cost of providing this notice was de minimis. Indeed, under the statute, cities have no trouble mailing notice to those whose property it determines *not* to be blighted. Since "there seem to be no compelling or even persuasive reasons why such direct notice cannot be given,"

---

[9] Though we have considered this issue briefly, we note Glendale did not argue that notice of the blight hearing satisfied due process.

-18-

*Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 116 (1956), we conclude due process required direct notice that this adverse action had been taken against M.A.K.'s property.[10]

### a. *Individualized notice*

Glendale makes several counter-arguments. The City first argues the Supreme Court's early-twentieth-century decision in *North Laramie Land Co. v. Hoffman*, 268 U.S. 276 (1925), holds that a state need not provide individualized notice of condemnation proceedings. But *North Laramie* is distinguishable from the circumstances here. And as we explain, *Mullane* and other cases "call[] into question the continued validity" of the rule set forth in *North Laramie*. *See Brody v. Vill. of Port Chester*, 434 F.3d 121, 132 (2d Cir. 2005).

In *North Laramie*, the Supreme Court held that due process did not require Platt County, Wyoming to individually notify persons their property had been taken for the establishment of a road, even though they had a limited window of thirty days to contest the taking. 268 U.S. at 282–83, 287 (1925). Neither did the County have to provide direct notice to property owners about its assessment of damages, even though the decision triggered a 30-day window of time in which

---

[10] Our decision only concerns the notice due when a property owner has a right to challenge a blight determination that can lead to transfer of the property. We do not here decide how much notice due process would require if a property owner had a cause of action to challenge a blight determination, but that blight determination could not lead to the transfer of the property.

-19-

the owners could challenge the damages assessment in court.  *Id.* at 286–87.  That was so because "[a]ll persons are charged with knowledge of the provisions of statutes," and because "the land owner must take account in providing for the management of his property and safeguarding his interest in it."  *Id.* at 283.  "In consequence," the Court noted, "statutes providing for taxation or condemnation of land may adopt a procedure, summary in character, and . . . notice of such proceedings may be indirect."  *Id.*

But *North Laramie*'s rule does not control here, for three reasons.

First, and most fundamentally, *North Laramie* is distinguishable.  The *North Laramie* court did not explicitly consider the amount of notice required to protect property owners' interest in a statutory cause of action.  Our decision, by contrast, rests on the notice cities must give property owners so they can preserve a *right to review* that expires in thirty days—not their real estate interests in general.

What is more, the statute at issue in *North Laramie* provided for publication notice in a local newspaper.  *Id.* at 285, 286–87.  But Glendale provided far less—no notice at all.  So far as we can tell at this stage, the blight finding was only published, if at all, in whichever way the city chooses to record its resolutions.  That is clearly not the kind of "publication notice" *North Laramie* relied on.

-20-

Second, even if *North Laramie* were squarely on point, its reasoning no longer has much force. *North Laramie* was "framed in recognition of [a] fact" that is no longer true today: that publication notice is an effective means of notifying owners of real estate of a pending proceeding. *See id.* at 283. Perhaps publication got the job done in 1925. But, as the Supreme Court explained three decades later, "[i]n too many instances notice by publication is no notice at all." *Walker v. City of Hutchinson*, 352 U.S. 112, 117 (1956).

Indeed, as commentators have recognized, the major driving force behind the Supreme Court's early endorsement of publication notice has disappeared. At the time, states had no jurisdiction over nonresident property owners. Since the state could not serve nonresidents with process, the only way a state could commence proceedings against a nonresident's property within the state was through constructive notice by publication. After the Court moved away from its hyper-territorial limits on state jurisdiction, publication notice became both less necessary and less defensible. *See Mennonite*, 462 U.S. at 796 n.3 (explaining this evolution); Arthur F. Greenbaum, *The Postman Never Rings Twice: The Constitutionality of Service of Process by Posting After* Greene v. Lindsey, 33 Am. U. L. Rev. 601, 604–07 (1984) (same); *The Constitutionality of Notice by Publication in Tax Sale Proceedings*, 84 Yale L.J. 1505, 1506–07 (1975) (same); *Requirements of Notice in Rem Proceedings*, 70 Harv. L. Rev. 1257, 1257, 1265 (1957) (same).

Third, even if its reasoning were persuasive and on point, *North Laramie* has not survived the onslaught of inconsistent decisions—indeed, the transformation of modern notions of due process—that took place since the 1950's. *See* Frank H. Easterbrook, *Substance and Due Process*, 1982 Sup. Ct. Rev. 85, 85–87, 105–09 (1982) (tracing the transformation of procedural due process doctrine). The Court first fully articulated the modern conception of the Due Process Clause's notice requirements for judicial proceedings in *Mullane*. And *Mullane* is on its face inconsistent with *North Laramie*'s rule.

In that case, New York Banking Law allowed small trusts to be pooled together for investment purposes. When the state settled accounts periodically, the state notified beneficiaries by publishing an ad in a newspaper. The Court first rejected the argument publication notice sufficed. "It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts." 339 U.S. at 315. The Court continued: "Publication may theoretically be available for all the world to see, but it is too much in our day to suppose that each or any individual beneficiary does or could examine all that is published to see if something may be tucked away in it that affects his property interests." *Id.* at 320.

By rejecting the idea that publication notice is enough, *Mullane* undermines the central premise of *North Laramie*. But *Mullane* does much more than simply

-22-

*imply* the demise of *North Laramie*'s reasoning, for *Mullane explicitly* created a different, and contrary, default rule. "Where the names and post office addresses of those affected by a proceeding are at hand," the Court announced, "the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318.

Since then, the Supreme Court "has adhered unwaveringly to the principle announced in *Mullane*." *Mennonite*, 462 U.S. at 797. In case after case, the Supreme Court has rejected publication notice for condemnation proceedings or other proceedings related to real estate, effectively abrogating *North Laramie*'s rule. In *Walker v. City of Hutchinson*, the city filed a condemnation action against Walker's property and only provided notice by publication. 352 U.S. 112, 113 (1956). The Court applied "the principles stated in the *Mullane* case" and held "notice by publication [fell] short of the requirements of due process." *Id.* at 116. So too in *Schroeder v. City of New York*, where the Court held New York City's publication notice of condemnation proceedings "did not measure up to the quality of notice which the Due Process Clause . . . requires." 371 U.S. at 211. And again in *Mennonite*, where the Court followed "the analysis in *Mullane*" and held that when counties will hold a sale of mortgaged property with unpaid property taxes, "constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address." 462 U.S. 791, 795–800 (1983). *See* Jeanni Atkins et. al., *The Threat to Notice by Publication*

*Posed by* Mennonite Board of Missions v. Adams, 21 Ohio N.U. L. Rev. 107, 110 & n.4, 111–12 (1994) (noting *Mennonite*'s inconsistency with *North Laramie* and other earlier cases).

Though the Court has not explicitly abrogated *North Laramie*, it cannot be said that a blanket "publication notice is enough for real estate" rule has survived. Indeed, in *Walker*, the Supreme Court mentioned *North Laramie* in a footnote, interpreting it merely as having upheld a law that provided for both publication notice and notice by mail (in which case, it does not conflict with our decision here either). *See* 352 U.S. at 116 n.6; *see also The Constitutionality of Notice by Publication in Tax Sale Proceedings*, *supra*, at 1518 n.25 ("In *Walker*, the Court distinguished" *North Laramie* "in such a way as to suggest an overruling of" it); *Requirements of Notice in Rem Proceedings*, *supra*, at 1265 (suggesting *Walker* is inconsistent with *North Laramie*). The only other mentions of *North Laramie* in the previously mentioned cases were in the dissents. *See Walker*, 352 U.S. at 127 (Burton, J., dissenting); *Mennonite*, 462 U.S. at 804 (O'Connor, J., dissenting).

One more point need be said about *North Laramie*. The *North Laramie* Court suggested property owners do not need notice of an adverse action against their property if they could have taken steps to find out about the adverse action themselves. "A land owner who had notice of the initiation of the proceedings for the opening of the road," the Court explained, "would have experienced no practical difficulty in ascertaining when the Board of County Commissioners took

final action and by filing notice of appeal to the District Court within thirty days thereafter, he could have secured the full hearing to which he is constitutionally entitled." 268 U.S. at 287. "Having failed to adopt such procedure, the plaintiff cannot complain of a denial of due process of law," the Court concluded. *Id.* This too is no longer good law. As previously explained, the Supreme Court has now made it clear that a plaintiff's sub-par diligence does not dissolve the government's notice obligations. *See Jones v. Flowers*, 547 U.S. 220, 232, 234 (2006); *Mennonite*, 462 U.S. at 799; *Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 276 (1st Cir. 2011) (explaining this rule).

For all the foregoing reasons, we think reports of *North Laramie*'s death have *not* been greatly exaggerated. In *Brody v. Village of Port Chester*, the Second Circuit also grappled (albeit in a slightly different context) with the contradiction between *Mullane* and "what seems to be the *per se* rule of *North Laramie*." 434 F.3d at 132. "Forced to hew a rule out of this contradictory mandate," the court sided with *Mullane* and its unbroken stream of progeny. *Id.* We follow suit.

### b. Knowledge of the law

Glendale next argues due process does not require cities to notify property owners about their ability to seek review because "citizens are presumptively charged with knowledge of the law." *See Atkins v. Parker*, 472 U.S. 115, 130 (1985). Glendale is correct that due process did not require it to tell M.A.K. that

it had only thirty days to seek review and how to seek that review.  But Glendale is incorrect this means it did not have to provide any notice at all.

Glendale's conclusion to the contrary elides one key point: the Supreme Court's case law on the "knowledge of the law" presumption distinguishes between those laws and regulations which are "self-executing" and those which only take effect after a legal proceeding begins.  *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485–486 (1988); *Texaco, Inc. v. Short*, 454 U.S. 516, 533–34 (1982).  When a published law provides a certain amount of time for a person to take action in order to protect his or her property rights, the government generally does not have to notify that person about the deadline.  But when it is "only after [government] actions take place that the time period begins to run," the government must provide notice.  *Tulsa*, 485 U.S. at 487.  In other words, if the clock only begins to tick after the government takes a formal action, the government must let the affected person know about what it did.[11]

To illustrate, consider the difference between a statute of limitations and the amount of time a party has to answer a complaint under Rule 12.  Both are published, but both are not self-executing.  A statute of limitations is self-

---

[11] This rule only applies when the government takes a formal action triggering the deadline.  For that reason, the district court's worry that this rule might require government tortfeasors to inform their victims about the statute of limitations was misplaced.  *See Texaco, Inc.*, 454 U.S. at 536 (1982) ("The Due Process Clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run . . . .").

executing because a party need not commence a proceeding to start the clock. Publication of the statute is therefore sufficient notice for persons with claims to find out how long they have to bring suit. But the published rule regarding how long one has to answer a complaint is not sufficient to notify a person who does not know he or she has been sued. The rule is not self-executing because an action must be taken before the clock starts to tick. Sure, a person can be aware in general that if he is sued, he has a certain amount of time to respond. But that person is not required to check court records to make sure he has not been sued. Due process requires the defendant be notified of a pending action.

Here, Glendale took a formal action: it found M.A.K.'s property blighted. M.A.K. was not aware of that action. To be sure, we can impute to M.A.K. knowledge that *if* its property were ever to be found blighted, it would have thirty days to challenge that determination. But it never found out its property was so designated—not until several months after the fact, at least. Our usual rule that citizens are presumptively charged with knowledge of the law therefore does not derail our conclusion that, in the circumstances of this case, Glendale had to notify M.A.K. about the blight determination.

*c.  Other opportunities for review*

Finally, Glendale insists that Colorado's statute allows M.A.K. to challenge the original blight determination if and when a condemnation proceeding begins.[12] Glendale bases this assertion on Colorado's provisions governing condemnations for blight, which require "the condemning entity to demonstrate, by clear and convincing evidence, that the taking of the property is necessary for the eradication of blight." Colo. Rev. Stat. Ann. § 38-1-101(2)(b). Glendale thus argues no harm was done when M.A.K. lost its statutory right to review the blight determination within thirty days, because the state provides an opportunity to bring the same claim during a condemnation proceeding.

We disagree that the condemnation proceeding adequately compensates M.A.K. for the loss of its statutory right to review of the blight determination.

First of all, Glendale might *never* bring a condemnation proceeding. An opportunity for review that may never come cannot replace a statutory *right* to review.

Second, a *cause of action* to have the blight determination *reversed* is not the same thing as *being able to argue* the property is not blighted in a future condemnation action. The first is a cause of action to reverse an erroneous blight

_____

[12] The district court also noted that M.A.K. can bring a federal takings challenge if the city brings a condemnation proceeding. This is not an adequate substitute, however, because the federal public-use challenge would not necessarily protect M.A.K. from a blight determination that violates Colorado's statute.

determination and so prevent a condemnation proceeding from commencing in the first place. The second is no cause of action at all. It is only a possible argument to be made in the midst of a condemnation proceeding that is *already* underway—a last-ditch defense, instead of a nip in the bud.

Third, at the most basic level, a proceeding for review of the blight determination and a condemnation proceeding are not equivalent because a blight determination and a condemnation are different things in themselves. True, the blight determination is a step leading toward condemnation. But the blight determination also stands alone. It exists for seven years even if the city *never* brings a condemnation proceeding. And the burdens it creates—uncertainty for property owners chief among them—are separate from the burdens a condemnation creates. For that reason, a condemnation proceeding, no matter how thorough, cannot clean up for a lost opportunity to challenge the blight determination that came before it.

In sum, even if property owners can argue their property is not blighted if and when condemnation proceedings begin, that does not preserve the cause of action for immediate review of the blight determination itself.

### 2. *Notice of the right of review within 30 days*

As for specific notice of the thirty-day time frame in which to seek review, we agree with Glendale that due process did not require it. If M.A.K. had been notified of the blight finding, it would have been up to M.A.K. to find out what

remedies were available under state law.

The Supreme Court explained this principle in *City of West Covina v. Perkins*, 525 U.S. 234 (1999). There, plaintiffs challenged a city's procedures for the return of property seized during a search, arguing due process required the city to tell plaintiffs how to get the property back. *Id.* at 236–37. The Court held that "[i]ndividualized notice that the officers have taken the property is necessary . . . because the property owner would have no other reasonable means of ascertaining who was responsible for his loss." *Id.* at 241. But "[o]nce the property owner is informed" of the deprivation, "he can turn to these public sources to learn about the remedial procedures available to him." *Id.*

In prior cases, it is true we have said or assumed that "[d]ue process also requires some indication that a procedure exists to protect one's exempt property and how, in general, either to trigger the process or to gain information regarding the process." *Aacen v. San Juan Cty. Sheriff's Dep't*, 944 F.2d 691, 699 (10th Cir. 1991); *see DiCesare v. Stuart*, 12 F.3d 973, 978 (10th Cir. 1993). Those cases relied on the Supreme Court's decision in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). In *Memphis Light*, the Supreme Court held due process required a municipal utility to provide customers notice of how to contest the termination of the utility service. *Id.* at 22.

But as other courts have recognized, *West Covina*, 525 U.S. at 234, limited *Memphis Light*'s holding. *See Gates v. City of Chicago*, 623 F.3d 389, 398 (7th

Cir. 2010); *Arrington v. Helms*, 438 F.3d 1336, 1351 n.16 (11th Cir. 2006). The *West Covina* Court specifically distinguished *Memphis Light*, explaining that case "does not support a general rule that notice of remedies and procedures is required." *West Covina*, 525 U.S. at 242. Instead, the *Memphis Light* rule only applies when "the administrative procedures at issue" are "arcane and are not set forth in documents accessible to the public." *Id.* Where, by contrast, "state-law remedies" are "established by published, generally available state statutes and case law," the *Memphis Light* rule does not apply. *Id.* at 241.

*West Covina*, not *Memphis Light*, applies here. The right to seek review within thirty days is publicly accessible in a statute. Had M.A.K. been notified of the blight determination, it could have turned to "public sources to learn about the remedial procedures available to [it]." *Id.*

We realize this conclusion is in tension with that of the Second Circuit in *Brody*, 434 F.3d at 130–32. There, the court concluded—in very similar circumstances—that *Mullane* required a city to inform property owners of the thirty-day deadline to seek review of a blight determination. *Id.* The court reasoned that the additional burden of including information about property owners' right to contest the determination was small, and the thirty-day period short. *Id.* at 132. It also thought the "average landowner" would not "have appreciated that notice" of the determination "began the exclusive period in which to initiate a challenge." *Id.*

While we acknowledge those potential problems, the Second Circuit did not consider *West Covina*'s effect on its conclusion. We think our conclusion more faithfully follows *West Covina*'s reasoning. And we also think the thirty-day deadline is not so short as to make it too difficult for property owners to inquire into their remedies in time. *Compare Grayden v. Rhodes*, 345 F.3d 1225, 1243 (11th Cir. 2003) (due process required notice of right to contest condemnation when tenants were provided with just thirty-six hours to vacate their homes), *with Reams v. Irvin*, 561 F.3d 1258, 1265 (11th Cir. 2009) (due process did not require notice of right to contest determination when person had thirty days to "consult publicly available documents, discover [the] right to a hearing, and exercise that right"), *and Arrington*, 438 F.3d at 1353 (same).

While letting owners know they only have thirty days to challenge the blight finding may be a best practice, it is not constitutionally compelled. We see no need to require "individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law." *West Covina*, 525 U.S. at 241.

## III. Conclusion

Colorado's statute gave M.A.K. a right to seek review of a blight determination for abuse of discretion. At the same time, it allowed Glendale to find M.A.K.'s property blighted without notifying M.A.K. This was so even

though the blight determination started the clock on the thirty days M.A.K. had to seek review and commenced a seven-year period during which Glendale could bring condemnation proceedings against the property.

Accepting M.A.K.'s allegations as true, we hold M.A.K. has a protected property interest in the statutory cause of action for abuse-of-discretion review. Because Glendale's failure to notify M.A.K. of the blight determination effectively deprived M.A.K. of this right, Glendale violated M.A.K.'s right to due process. Had M.A.K. learned about the blight determination, M.A.K. could have found out for itself what remedies it could pursue.

What the Due Process Clause required here was not so much to ask—merely a letter, an envelope, and a stamp. The Supreme Court has repeatedly held that notice by mail is practically "a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party." *Mennonite Bd.*, 462 U.S. at 800.

We take care to note the limits of our holding, however. This is not a case in which the property owner attended the blight hearing and learned of the determination there. M.A.K. alleges it asked about the significance of the blight hearing and was told not to worry about it. We only hold that where, as alleged here, a property owner does not otherwise learn about the blight determination, it violates due process for a City not to send direct notice.

For the foregoing reasons, we **REVERSE** the district court's grant of the

-34-

motion to dismiss and remand for further proceedings consistent with this opinion.